179      623
21 SC ¹330
21 SC ²330

# John Shrader *v.* The United States Glass Co., Appellant.

[Marked to be reported.]

*Evidence—Proof of execution papers—Burden of proof.*

In all actions and proceedings where the plaintiff claims to recover upon paper writings, it is his duty to prove them against all attacks, and that duty remains throughout.

*Evidence—Mortgage—Payment—Execution of papers—Burden of proof.*

In an action of ejectment both parties claimed title under sheriff's deeds. Defendant claimed title under a sheriff's sale upon proceedings to foreclose a mortgage, which was prior in date to the judgment upon the proceedings under which the plaintiff claimed. The plaintiff alleged that the mortgage had been paid in full before the sheriff's sale in foreclosure proceedings, and that the sale passed no title to defendant's predecessor in title, and, therefore, none to the defendant who was an innocent purchaser. The plaintiff introduced receipts in evidence which he claimed were receipts for payments on account of the mortgage debt. On their face these papers did not purport to be payments on account of this identical mortgage, and they were less in amount than the amount of the mortgage. The defendant introduced evidence tending to show that the signatures were forgeries. The volume and weight of the testimony were with the defendant. *Held,* (1) that it was error to charge the jury that a presumption of innocence arose in favor of the papers, and that thereby the burden of proof was shifted from the plaintiff who asserted the papers to the defendant who responded to them, and denied them; (2) that the burden of proof rested upon the plaintiff from the beginning to the end of the case; (3) that a judgment on a verdict for the plaintiff should be reversed.

*Practice, C. P.—Charge of the court—Confusing instructions.*

A charge is confusing and misleading where the judge says at one time that he thinks he ought not to put the burden of proof upon either party, but subsequently expressly puts it on the defendant; and such charge is cause for reversal.

*Evidence—Competency of witness—Ejectment.*

In an action of ejectment where the predecessor in title of one party is dead, the predecessor of the other party is a competent witness, and this is especially the case where the testimony of the deceased predecessor, taken at a former trial, has been given in evidence.

Argued Nov. 10, 1886. Appeal, No. 3, Oct. T., 1896, by defendant, from judgment of C. P. No. 1, Allegheny Co., March T., 1894, No. 674, on verdict for plaintiff. Before Sterrett, C. J., Green, Williams, McCollum, Mitchell, Dean and Fell, JJ. Reversed.

Ejectment for a tract of land in Pointview borough.    Before
SLAGLE, J.

The facts appear by the opinion of the Supreme Court.

At the trial William Shrader was called as a witness for
plaintiff and examined as follows :

" Q. Are you the same William Shrader who purchased the
land in dispute in this case at sheriff's sale in 1884, as the prop-
erty of Frederick Rhodes ?    A. Yes, sir.    Q. Were you present
at the other ejectment for this land, between John Shrader and
Benjamin Coursin?    A. Yes, sir."

Defendant thereupon objected as follows :

The testimony of this witness is objected to as being incompe-
tent, for the reason that his answers disclose that he is the source
of title adverse to the title of the defendant, and the plaintiff
has proved that Benjamin Coursin, the source of the defendant's
title, is dead.    Therefore, the witness is interested in the matter
in controversy as between his title and Benjamin Coursin's title,
which controversy is the issue in this case, and Benjamin Cour-
sin being dead, this witness cannot testify.    And further,
because the witness, at No. 477, June term, 1887, being the scire
facias upon Benjamin Coursin's mortgage, through which the
defendant claims title, asked leave of court to be made a party
defendant in that action, and thereupon moved to open and
strike from the record the judgment which Coursin had pro-
cured upon his mortgage against Frederick Rhodes, and being
a party to that action or controversy opposed to Benjamin Cour-
sin, and being a party interested, his testimony is incompetent.

By the Court: The objection is overruled and bill sealed for
defendant. [2]

The witness testified as to the genuineness of the signature of
Benjamin Coursin to the receipts in evidence, as stated in the
opinion of the Supreme Court.

Verdict and judgment for plaintiff.    Defendant appealed.

*Errors assigned* were (1) ruling of evidence, quoting the bill
of exception ; (2) portion of charge quoted in the opinion of the
Supreme Court.

*John S. Ferguson* and *Willis F. McCook*, with them *John S.
Robb*, for appellant.—It is incumbent on a grantee to show that

an alteration, beneficial to him, in a deed, was properly made. The law does not presume that an interlineation in a deed is a forgery, or made after execution; it is a question of fact for the jury, upon proof adduced by him who offers the deed: Robinson v. Myers, 67 Pa. 9; Jordan v. Stewart, 23 Pa. 244.

The titles opposed to each other were the titles of William Shrader, the witness, on the one hand, and of Benjamin Coursin, the decedent, upon the other. The defense, upon the first trial, was made by John Shrader, William Shrader's tenant, upon William Shrader's title, and he contended that that title was good against the Coursin title, because the Rhodes' mortgage had been paid. Therefore, William Shrader, was an actual party in the controversy opposed to Benjamin Coursin, and in this case he is offered as a witness to sustain his own title, and to prove acts at that trial between himself and Benjamin Coursin and statements made by Benjamin Coursin, at that trial, in his presence.

*S. R. Huss*, with him *J. M. Garrison*, for appellee.—The receipts being in the first instance properly admitted in evidence, they were presumed to be genuine, and the burden of showing they were forgeries rested with the defendant. The cases cited by defendant's counsel, Jordan v. Steward, 23 Pa. 244, and Robinson v. Myers, 67 Pa. 9, apply only to such instruments of writing offered in evidence as have interlineations or erasures apparent on their face, so as to raise the question as to whether such interlineations or erasures were made before signing.

Not being a party to the suit, nor in any way interested in its event Shrader would have been competent to testify as a witness in the case before the act of 1887, because he was not a surviving party to the thing or contract. But the act of 1887 was an enlarging act, and rendered surviving parties to the thing or contract in action fully competent to testify, except where they have an interest adverse to the right of the deceased party: Dickson v. McGraw Bros., 151 Pa. 98; Gerz v. Weber, 151 Pa. 396; Tarr v. Robinson, 158 Pa. 60; Graff v. Callahan, 158 Pa. 380; Wolf v. Wolf, 158 Pa. 621; Brose's Estate, 155 Pa. 619; Smith v. Hay, 152 Pa. 377; Carpenter v. U. S. Life Ins. Co., 161 Pa. 9; Kuhn's Estate, 163 Pa. 438; Irwin v. Nolde, 164 Pa. 205; Smith v. Rishel, Admr., 164 Pa. 184; Kyte v. Foran, 167 Pa. 252; Royer v. Ephrata Boro., 171 Pa. 429.

OPINION BY MR. JUSTICE GREEN, January 4, 1897:

The title of the defendant, being acquired under a sheriff's sale upon proceedings on a mortgage which was prior in time to the judgment, upon the proceedings under which the plaintiff's claim of title was founded, was the superior title. Before the plaintiff could recover he was obliged to establish a title, the practical effect of which was to invalidate the title of the defendant, acquired under the mortgage. In the scire facias on the mortgage, judgment was recovered on May 5, 1887, for $4,262.22, and the sale under that judgment was the source of the defendant's title. The only reply made to this title was that the mortgage under which the sale took place was paid off in full before the sale and, therefore, the sale passed no title to the defendant's predecessor in the title. As this defense involved not only the validity of the mortgage, but also of the judgment obtained in an adversary proceeding on the mortgage, the task of the plaintiff was a very serious one, especially as the defendant claimed title under judicial proceedings which were perfectly regular on their face, and the defendant was an innocent purchaser. No less than three solemn records were involved, besides the good faith of the parties. First the mortgage, then the judgment, and third the sheriff's deed were all involved, and unless the plaintiff could defeat them all he had no valid claim of title against the defendant. It cannot be doubted that the whole burden of defeating such a title rested upon the plaintiff. He undertook to discharge it. The mortgage was dated May 18, 1872, and was made by Frederick Rhodes, the then owner, to Benjamin Coursin, guardian of the children of David H. Rhodes. The writ of scire facias was issued on this mortgage to June term, 1887, and judgment for $4,622.22 was obtained on May 5, 1887. The property was sold to Benjamin Coursin, and a sheriff's deed to him was delivered on July 2, 1887. In the meantime the title of the mortgagor, Frederick Rhodes, had been sold by the sheriff under an execution issued upon a judgment obtained at April term, 1883, and on January 19, 1884, a sheriff's deed was delivered to William Shrader. As this judgment was long subsequent to the mortgage, the sale did not discharge the lien of the mortgage, and the purchaser held title subject to that lien.

In 1888, the land being in the possession of John Shrader,

the present plaintiff, under a demise from his father, William Shrader, who had purchased it at the sale under the judgment, Benjamin Coursin, the purchaser at the sale under the mortgage, brought an ejectment against him to recover possession of the land. On the trial of that action John Shrader made defense that the mortgage had been paid to Coursin, the plaintiff, but the verdict and judgment were in favor of Coursin. On appeal to this court the judgment was affirmed on the ground that the court below had left the question of payment fairly to the jury, who found by their verdict that the mortgage had not been paid. In these circumstances the defendant in that case brought the present, second ejectment, for the same land, and set up the same matter that was in controversy on the former case, to wit, that the mortgage had been paid off before the judgment on the sci. fa. had been obtained. As the maintenance of this claim was essential to the plaintiff's right of recovery the burden of proving it rested upon the plaintiff from the beginning to the end of the case. He undertook to prove the payment, not by proving the fact of payment directly, but by giving in evidence certain receipts which might or might not show payment of the mortgage, according to the force and effect of other facts in evidence. Among other things the defendant alleged, and gave evidence to prove, that the receipts, given in evidence by the plaintiff, were not genuine. Expert testimony was taken on both sides of this question, and other facts were given in evidence as bearing upon the question. The learned court below, upon the question of the signatures to the papers, charged the jury thus, " These papers are set up and proved by the plaintiff in the first place. The defendant says they are not genuine, and it ought to satisfy you of that fact. I do not know however that I ought to throw the burden of proof upon either side in a question of that sort. It is a mere question for you gentlemen, and I will not throw the burden of proof upon either side upon that question of forgery. Only this, that in a case like this, these papers are presented here formally, and if alleged to be forgeries, it is an imputation of dishonesty, and there is a presumption in favor of honesty always. I think after all the burden is upon the defendant to satisfy you that they are forgeries as it alleges." We are unable to agree to this doctrine. The case is not one of a shifting burden of proof, changing from

one side to the other during the course of the trial. The defendant had a right to rest upon its title under the mortgage. It was perfectly regular in all respects, and apparently, and on the state of the record just as it stood, the plaintiff's claim was entirely worthless as against the mortgage. If no evidence was given except the records of the two titles just as they stood, as a matter of course, the verdict would necessarily be for the defendant. The fact of payment of the mortgage was an affirmative fact which it was the clear duty of the plaintiff to establish, and to establish it by clear and satisfactory testimony. And it was a more than ordinarily serious burden, for it was an undertaking, not only to prove payments which might or might not be made upon account of the mortgage, but much more than that. A judgment had been recovered in an action upon the mortgage long after the alleged payments were made, and the presumption would naturally be very strong that if the alleged payments had actually been made on the mortgage, the judgment could not have been recovered for the whole amount. But in addition to that, a judicial sale was had upon the judgment, and a sheriff's deed was executed and delivered to the purchaser for the land, and all of these records and proceeedings were to be set aside by proof of a receipt for a note and an order on another person for the payment of a sum of money, when the aggregate of the note and the order was not nearly so much as the amount of the mortgage. It is certainly true that when these papers were offered and admitted, they were open to any reply that could be made against them, and when their authenticity was denied by the adduction of testimony hostile to their integrity, it cannot be possible that the burden of proof was changed, and instead of the plaintiff being obliged to prove payment, the defendant was bound to prove nonpayment. When the plaintiff offered the receipts in evidence it was a necessary part of his duty to prove their execution. This put the fact of execution in issue, and the plaintiff had the affirmative of that issue to establish. As a matter of course the defendant was at liberty to attack them by whatever testimony it could, either by showing non-execution, or by proving any facts inconsistent with either their validity, or the right of the plaintiff to use them as a reply to the particular mortgage in question. On their face they do not purport to be payments on account of this

identical mortgage, and hence further evidence was necessary to establish the connection. But in any and every point of view, they were only capable of use as being evidence, in some degree, of the leading fact of payment of the money. That was the main fact in issue, it was absolutely vital to the plaintiff's right of recovery; the fact of actual payment, and the only means of proof offered in the case, was by certain papers which had no force of themselves, and no place in the cause except by proof of their execution. That fact also was not proved except by testimony to prove the handwriting of the signatures. And the very best that could be said of them after that testimony was delivered, was that the receipts were but prima facie proof of payment, they concluded nobody; the actual fact of their execution was still an open question to be determined by the whole, and not a part, of the proof in the cause. That proof included not only what was offered by the plaintiff, but also what was offered by the defendant, and the entire question was for the jury upon all the testimony affecting that subject.

The foregoing considerations are rendered more important in view of the fact that the genuine character of the papers in question was most forcibly and vigorously attacked by the testimony of the defendant. Benjamin Coursin, whose name and writing appeared in the disputed papers, was examined on the former trial, and denied in the most positive and emphatic manner that he ever wrote or signed either of the two which were claimed to be written or signed by him. He testified also that he had never seen or heard of them, or had any knowledge of them. He died after that trial and before the trial of the present case, but his testimony on the former trial was given in evidence in this, and witnesses were also examined who testified directly to what he said on the first trial. In addition, three of his sons were examined, all of whom denied that the writings or the signatures were his. Also a number of gentlemen having the greatest familiarity with him and his writings, testified that the writings and signatures in question were not genuine. A few witnesses, including two experts, testified to the contrary for the plaintiff, but we feel constrained to say that the volume and weight of the testimony on this subject were with the defendant. This being the state of the controversy, and of the testimony on the trial, we think it was serious error to charge

the jury that a presumption of innocence arose in favor of the papers, and that thereby the burden of proof was shifted from the plaintiff who asserted the papers, to the defendant who responded to them and denied them. In all actions and proceedings where the plaintiff claims to recover upon paper writings it is his duty to prove them against all attacks, and that duty remains throughout.

There is an additional reason for reversing the judgment, on account of the charge being uncertain and therefore misleading on this subject. The learned judge of the court below was evidently in doubt upon the question, and charged in contradictory terms, saying at one time that he thought he ought not to put the burden of proof upon either party, but he afterwards changed his mind and did expressly put it all upon the defendant. The first assignment of error is sustained. As to the second we think it is without merit, especially as the testimony of Benjamin Coursin taken on the first trial, was given in evidence on the trial of the present case.

Judgment reversed and venire de novo awarded.