# Shannon, Appellant, *v.* Castner.

*Judgment—Opening judgment—Evidence—Forgery.*

The unsupported testimony of a defendant in a confessed judgment admitting the execution of the instrument upon which the judgment was entered, but alleging fraud in the procurement or use of it, which is directly opposed by the testimony of the plaintiff, is insufficient to warrant the opening of the judgment or to be submitted to the jury on the trial of an issue awarded.

Where the defendant in a confessed judgment testifies that his signature is a forgery, and there is opposing testimony, there is no inflexible rule which compels the court to open the judgment. Even in such a case the judge should exercise a sound discretion, after a careful consideration of the character and effect of the testimony. There is, however, a plain distinction between such a case, where the paper itself does not go into the scales against him, and a case where the testimony of the defendant is opposed by that of the plaintiff, and the latter is aided by the presumption arising from an admittedly genuine paper.

*Judgment—Opening judgment—Imposing terms.*

Where a judgment entered upon a warrant of attorney is opened generally, and without terms, the plaintiff is put to proof of his cause of action precisely as if no judgment had been entered. When it is opened upon an allegation of forgery it is not usual to impose as one of the terms that the instrument alleged to be forged shall " be offered and read on the trial of the case as a prima facie case for the plaintiff." If such terms are imposed in the order, they may be stricken out after due notice, although a trial has been had, and a new trial granted.

*Judgment—Opening judgment—Evidence—Declarations—Res gestæ.*

Where declarations or acts accompany the facts in controversy and tend to illustrate or explain it, they are treated not as hearsay but as original evidence, in other words, as part of the res gestæ, but declarations or acts of a person other than the one sought to be charged, if not brought to the knowledge of the latter or shown to be authorized by him, are not part of the res gestæ.

On the trial of an issue to determine the validity of a confessed judgment, where one of the two defendants alleges that his name was forged to the judgment note, declarations and acts of the other defendant are not admissible, where there is no offer to bring home knowledge of them to the first defendant, or to show that he authorized them.

*Evidence—Cross-examination—Discretion—Cross-examination of expert as to his fees.*

The extent to which a party may go in cross-examination for the purpose of testing the accuracy of recollection, the interest or the bias of an opposing witness rests largely in the discretion of the trial judge, and the

appellate court will not reverse because of the admission of questions asked for that purpose, unless there has been a very plain abuse of discretion to the injury of the party complaining. The fact that an expert witness is to receive, or has received, per diem compensation beyond the legal witness fee does not affect his competency as a witness, and it may have very slight bearing upon the question of his impartiality. Nevertheless his relation to the party calling him may be such as to warrant the jury in taking it into consideration in weighing his testimony, Therefore, it is not reversible error to permit cross-examination upon the subject within reasonable limits.

*Evidence—Cross-examination—Improbability of statements.*

The general rule limiting cross-examination to the matters elicited in the examination in chief does not exclude questions as to declarations or conduct naturally tending to show the improbability of statements made in the examination in chief.

*Evidence—Cross-examination—Cumulative questions.*

Assignments of error relating to questions put on cross-examination will be overruled where substantially the same questions were put to and answered by the witness in other parts of his testimony.

*Judgment—Opening judgment—Witness—Party dead.*

On an issue to determine the validity of a confessed judgment the defendant alleged that his signature to the judgment note was forged. A competent witness called by the plaintiff testified that in a conversation between her and the defendant, the latter admitted that he had signed the note in controversy. When the defendant was called to contradict her, objection was made upon the sole ground that the conversation took place prior to the death of the payee in the note, and original plaintiff in the issue. *Held*, (1) the objection was properly overruled, as there were present all the elements requisite to bring the case within the operation of the Act of June 11, 1891, P. L. 287 ; (2) that an additional objection offered for the first time in the appellate court as to the form of the question was too late.

*Evidence—Witness—Refreshing memory—Books of account.*

Where owing to certain testimony given by a witness, it becomes necessary to show that the witness took up her residence at a certain place on a certain date, a merchant may be permitted to testify that at about the time mentioned he sold the witness a bill of goods, and he may be permitted to refresh his memory as to the date by referring to his books of account. In such a case it is immaterial that he enumerates the articles sold after refreshing his memory from the books.

*Evidence—Witness—Contradiction of witness.*

The right to discredit a witness by proof of contradictory statements without first calling his attention to them in order that he may have an opportunity to explain or reconcile them, is a matter within the sound discretion of the trial judge upon the circumstances of the case.

On the trial of an issue to determine the validity of a judgment, it appeared that a witness for the plaintiff between the date of the granting of the rule, and the date of the trial of the issue had become mentally incompetent to testify. The plaintiff read in evidence the deposition of the witness taken on the rule to open. The defendant then offered to contradict the witness by proof of his declarations made after his deposition was taken. The witness had been in the court room, but before the defendant could examine him as to his contradictory statements he had left the court without permission. The plaintiff objected to the defendant's offer on the ground that the witness had not first been examined as to his contradictory statements and given an opportunity to explain them. *Held*, that the court committed no error in overruling the objection.

*Judgment—Opening judgment—Evidence—Payment of taxes on money at interest.*

On the trial of an issue to determine the validity of a judgment entered on a judgment note alleged to have been signed by the defendant in the issue and another person, where the defendant denies his signature, and the plaintiff shows that the other maker had drawn another judgment note of the same amount to the defendant to secure him, and that this note had been entered up, although not by the defendant, the defendant in order to show that he had no knowledge of the transaction in a particular year, may prove by the tax assessment books that in the year mentioned he paid no taxes on money at interest.

*Judgment—Opening judgments—Depositions—Party dead—Evidence— Cross-examination.*

On the trial of an issue to determine the validity of a judgment where the plaintiff dies before the trial, the deposition of the plaintiff taken on the rule to open the judgment will be admitted, where it appears that the only objection to the deposition was the refusal of the plaintiff to answer a question on cross-examination when the deposition considered as a whole showed that the question had been substantially answered.

*Evidence—Depositions—Notice of filing—Rules of court.*

Where in compliance with a rule of court notice of the filing of a deposition has been given and has been accepted by the attorneys for the opposite party, and no exceptions have been filed to the deposition, objections to the deposition are thereby waived and cannot be raised at the trial.

*Rule of court—Construction of rules.*

Upon a question of the construction or application of its own rules, a court can be reversed only for manifest and material error.

*Judgment—Opening judgment—Delay—Forgery.*

Where the defendant in a confessed judgment alleges that his name was forged to the judgment note, a delay of one year after judgment was entered on the note to take steps to open the judgment will not make

him liable on the note if in fact his name was not signed to it by himself or by his authority.

The fact of the delay, however, is a significant circumstance for the consideration of the jury, but it may be explained by the defendant as the result of his obedience to the advice of counsel.

While the defendant in a confessed judgment who alleges that his signature was forged, may explain that his delay in taking steps to open the judgment was due to advice of counsel, his attorney will not be permitted to testify that at the time the advice was given the defendant had stated to him that his signature had been forged by his son.

*Evidence—Witness—Contradiction of witness.*

If a party asks and receives a negative answer to an irrelevant question, he is not in a position to complain of the admission of evidence to contradict it.

*Evidence—Handwriting—Expert—Act of May* 15, 1895, *P. L.* 69.

The Act of May 15, 1895, P. L. 69, made it competent for experts to make comparison between writings, but in nowise changed the law as to the introduction of other well authenticated writings of the same party for the purpose of comparison to be made by the jury.

On the trial of an issue to determine the validity of a confessed judgment where the defendant alleges that his name was forged, another paper signed by the defendant two years before the date of the note in question is properly admissible for purposes of comparison.

*Practice, C. P.—Trial—Appeals—Harmless error.*

There is no ground for reversal that one of the parties took up time in proving a fact that the other party admitted.

*Evidence—Handwriting—Comparison of papers—Act of May* 15, 1895, *P. L.* 69.

To authorize the admission of a writing offered as a test or standard, nothing short of evidence by a person who saw the party write the paper, or of an admission by such party of its being genuine or evidence of equal authority is sufficient.

It is the duty of the judge to require the same kind of proof as was required prior to the act of May 15, 1895, but if such proof is furnished and there is opposing testimony, his decision of the question of fact must ordinarily be accepted as conclusive, for the obvious reason that the credibility of the witnesses is an important factor, and of this he had better opportunity to judge than is afforded the appellate court.

*Judgment—Opening judgment—Evidence—Burden of proof.*

On the trial of an issue to determine the validity of a confessed judgment alleged to have been forged, the burden of proof rests on the plaintiff and it is incumbent on him to establish his allegation that the note in suit was signed by the defendant or by some one authorized by him.

In such a case it is not error for the court to charge as follows: "Bearing upon the question of the burden of proof in a case of this character,

we say to you that in this case, the suit being upon the note in controversy, and the plaintiff claiming to recover upon it, it is his duty to prove it against all attacks, and the burden remains on him throughout the case. Burden of proof and weight of evidence are two very different things. The burden of proof remains on the plaintiff in support of his case and does not change in any aspect of the case. The weight of the evidence may shift from side to side in the progress of a trial according to the nature and strength of the proofs offered in support or denial of the main facts to be established."

*Evidence—Presumption—Inference from nonproduction of testimony.*

In a proceeding to determine the validity of a paper alleged to have been forged, where neither party calls as a witness the alleged forger, the court is justified in refusing to charge as a matter of law that there is a " presumption " against either party.

Under some circumstances the jury may draw an unfavorable inference against a party from the nonproduction of evidence, but it is an inference of fact, not a presumption of law.

*Judgment—Opening judgment—Forgery—Charge.*

On the trial of an issue to determine the validity of a confessed judgment alleged to have been forged, it is error so to charge the jury as to give them the impression that the question at issue was to be, or at least might be, determined by them from a comparison of the disputed signature with a signature proved to be genuine, and that alone.

*Judgment—Opening judgment—Evidence—Forgery—Charge.*

Where the evidence of one witness is insufficient, apart from the evidence of a particular witness, standing by itself, to sustain a recovery in favor of the plaintiff upon a note alleged by the defendant to be a forgery, it is not error for the court to charge that under all the evidence, if the jury do not believe the evidence of the witness that the defendant told her that he had signed the note, the verdict must be for the defendant.

Argued May 6, 1902. Appeal, No. 21, April T., 1902, by plaintiff, from judgment of C. P. Clarion Co., April T., 1892, No. 349, on verdict for defendant in case of I. M. Shannon, Executor of John Yeany, deceased, v. J. P. Castner and Martin Castner. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Issue to determine the validity of a confessed judgment. Before CLARK, P. J.

At the trial it appeared that the judgment in question was entered on a judgment note in the following form:

$1000.00

Clarion, Pa., April 2," 1892

One year after date we promise to pay

promise to pay to the order of *John J. Geary*

One Thousand — ×× DOLLARS, 100

With interest, without defalcation, value received. And furthermore we empower any attorney of any Court of Record within the United States to appear for us and confess judgment against us for the above sum, with costs of suit, a release of errors, attorney's commission of five per cent. for collection, waiving inquisition and exemption and without stay of execution.

L. P. Castner [SEAL]

Marion Castner [SEAL]

ATTEST:

Martin Castner alleged that his signature was forged. On April 5, 1892, judgment was entered on the note. On June 28, 1895, Martin Castner obtained a rule to open the judgment as to himself. On September 6, 1898, this rule was made absolute. On March 11, 1899, a verdict was rendered for plaintiff. On February 5, 1900, the court amended the original order by striking out so much of it as permitted the note in controversy to be read at a prima facie case for the plaintiff. On April 4, 1900, plaintiff died. The second trial was had on December 19, 1900.

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were as follows:

1. The court below erred in its decree of September 6, 1898, opening the judgment, which decree is as follows: " And now, September 6, 1898, after argument and upon due consideration of the rule and of the testimony, the rule is hereby made absolute, and the judgment is opened as to Martin Castner to let him into his defense. The note to stand as a narr., and to be offered and read on the trial of the case as a prima facie case for plaintiff. The case to be tried on the plea of non assumpsit. Let the defendant file his plea."

2. The court erred in its decision of July 21, 1900, making absolute the rule granted on defendant's motion to amend the opening order of September 6, 1898.

3. The court erred in sustaining defendant's objection to the testimony of A. C. McComb as to what was said and done at the execution of the note in controversy, to wit: " Q. Mr. McComb, I show you paper, which is marked for identification, exhibit. ' A.' State if you ever saw that note before. A. Yes, sir. Q. You may state in whose handwriting the body of the note is. A. The filling up is in my handwriting. Q. Where were you when you filled it up? A. At our office. Q. At what date? A. April 2, 1892. Q. The date the note bears? A. Yes, sir. Q. For whom were you acting in the matter of the preparation of that note? A. We were acting for Mr. Yeany. Q. In what capacity? A. We had his money to loan. Q. You were loaning Mr. Yeany's money? A. Yes, sir. Q. Who negotiated that loan, you and Mr. Clarke, or both, or either of you? A. Both of us—the firm. Q. To whom was

the loan made? A. John P. Castner. Q. Were you present when the note was signed? A. I was present when the note was signed by J. P. Castner. Q. What was done with it after it was signed by him? A. He was to take it home and have his father—"

Defendant's counsel object to the witness stating anything J. P. Castner said.·

The Court: We will permit you to state whether the note was taken away by Mr. Castner and how it came back.

"A. (Continued.) It was taken away by him. Q. For what purpose?"

Objected to by defendant's counsel because it involves the declaration of John P. Castner.

The Court: The objection is sustained. Exception and bill.

4. The court erred in sustaining defendant's objection to the testimony of the same witness immediately following the above: "Q. On what condition were you to loan him this $1,000?"

Objected to by defendant's counsel as it involves the bargain between John P. Castner and the witness in the absence of Martin Castner.

The Court: We will sustain the objection. We will permit plaintiff to show that John P. Castner took that note away and that he brought it back again and the names that purport to be signed thereto. Exception and bill.

5. The court erred in sustaining the defendant's objection to the testimony of the same witness immediately following the above, to wit: "Q. In the negotiation of this loan, what was done, if anything, regarding the examination of the record as to Martin Castner?"

Objected to by defendant's counsel as irrelevant and cannot affect Martin Castner. Further, it throws no light on the genuineness of the signature to the note in suit.

The Court: The objection is sustained. Exception and bill.

6. The court erred in sustaining the defendant's objection to the testimony of the same witness immediately following the above: "Q. When the note was returned, state whether or not the attention of J. P. Castner was called to the manner in which 'Martin' was spelled."

Objected to by defendant's counsel.

The Court: The objection is sustained. Exception and bill.

7. The court erred in sustaining the defendant's objection to the evidence of the same witness immediately following the above as follows: " Q. Mr. McComb, you may state anything that was done there in reference to securing Martin Castner for going on that note."

Counsel for defendant objects to any conversation of any kind between the witness and J. P. Castner or any act in the absence of Martin Castner, that would involve declarations and acts of third parties by which the plaintiff hopes to affect Martin Castner in his absence and without his knowledge as incompetent.

The Court: We will sustain the objection. We will permit the plaintiff as we did before to show how the note was made and what was done with it, for the purpose as stated before. Exception and bill.

8. The court erred in sustaining defendant's objection to the testimony of S. K. Clarke touching the note in controversy and the money received thereon, to wit: " Q. Mr. Clarke, I believe you were asked and did not know whether any of the $1,000 that were received on the note in suit were applied on any note of which Martin Castner was joint maker with John P. Can you tell about this ? "

Objected to by defendant's counsel as incompetent, irrelevant and immaterial, unless brought to the knowledge of Martin Castner.

The Court: What is the purpose?

Mr. J. T. Maffett for plaintiff. It is to show it was for the benefit of Martin Castner.

The Court: The objection is sustained. Exception and bill.

9. The court erred in overruling plaintiff's objection to the evidence of J. B. Flack on cross-examination, to wit: Recross-examination of Mr. B. J. Reid. " Q. Mr. Flack, you do not come up here for ordinary witness pay, do you ? " Objected to by plaintiff's counsel as immaterial. The Court: We will take it for granted that he does not come for ordinary witness fees. "Q. What do you get a day? " Objected to by plaintiff's counsel as immaterial. " A. I can tell you very promptly, it is not conditional. Q. How much do you charge and receive for your services? " Objected to by plaintiff's counsel. The Court: The witness may answer the question. Objection. Counsel for

plaintiff now requests that the purpose of the inquiry be stated. Counsel for defendant state that it is for the purpose of showing the interest the witness may feel in the case and any possible bias he may have. Objected to by plaintiff. The court ruled that the evidence would be admitted; whereupon the plaintiff excepted and a bill of exceptions was sealed by the court. "A. My terms are $25.00 with railway fare and hotel bills additional. XQ. Mr. Maffett: State if these are the usual fees for men in your line of business. A. Yes, that is the usual fee in our line of business; it is not as high as they have in New York—$100 a day."

10. The court erred in overruling plaintiff's objection to the testimony of Michael Toomey, to wit: Defendant's counsel offer in connection with the testimony of this witness a bill of goods he sold to Matthew Castner, for the purpose of showing the character of the goods. Objected to by plaintiff's counsel as incompetent and irrelevant. The Court: We will permit the witness to refresh his recollection, if the charge is in his handwriting, and to state what goods Matthew Castner got. "Q. Mr. Toomey, state if the items are in your handwriting and state what the entries are." Objected to by the plaintiff as incompetent and irrelevant. Mr. F. J. Maffett for defendant: The purpose is to show the character of the goods; that they were household goods, cups and saucers, plates, dishes, table-cloths, and articles of that kind that go into a household, and are not for personal use: in other words, just such things as are used when people go to housekeeping. "A. The reason I refer to that is to show the date." Objected to by plaintiff as irrelevant and incompetent, and cannot in any way affect the issue trying. The Court: We will permit the witness to refresh his recollection; to state what goods he sold to Matthew Castner, but he is not to read off his books. Exception and bill. "Q. Now, Mr. Toomey, look at that bill of goods there, and refresh your recollection from the entry you have made, and state what you sold to Matthew Castner on November 28, 1884." Objected to further by the plaintiff for the reason that the witness has stated that he does not know where the goods were taken to from his store and the question is otherwise incompetent and irrelevant. The Court: Objection is overruled. Exception and bill. "A. One set of cups and saucers, 6 plates,

that would be a set; 2 dishes; 1 set of knives and forks; 1 set of tablespoons; 1 spoonholder; 1 set of teaspoons; 3 tin cups; 4 yards of white linen tablecloth; 2 yards of table oilcloth; 5 yards of toweling; 1 pair shears; 1 butter knife; 1 sack of flour; 1 sack of buckwheat flour; 1 husk and corn mattress."

11. The court erred in admitting the deposition of Martin Castner, taken before O. E. Nail, justice of the peace on July 31, 1895, and filed August 7, 1895. Objected to by plaintiff's counsel for the reason that on the taking of that deposition, Martin Castner testified in chief respecting his visit to the office of S. K. Clarke, Esq., in reference to the note in suit, to wit: Note in controversy shown witness: "I first saw this note when you (his counsel) took me to S. K. Clarke's office about a month ago," and App. 4 "I am not very well acquainted with Mr. Clarke, when Mr. McComb was in, was in his office a few times. Couldn't tell whether McComb & Clarke were attorneys, for my son J. P., didn't inquire into such business," and on cross-examination, he was asked this question: "Q. Were you at their office on your own business, or seeing to your son's business?" Objected to as not being a cross-examination, as there is nothing in the examination in chief that bears on it. The witness instructed not to answer (by counsel for defendant), and didn't answer. "A. I will not answer,"—in answer to plaintiff's question: "Will you answer?" The Court: We will hear the deposition for the present. Exception and bill.

12. The court erred in admitting in evidence the deposition of Hon. John W. Reed.

Defendant offers deposition of Hon. John W. Reed, taken on February 20, 1900, at Brookville, before William T. Darr, Esq., commissioner, by virtue of a rule from the court of common pleas of Clarion county, in this case, filed, February 23, 1900; notice of filing accepted February 23, 1900, by W. A. Hindman, attorney for plaintiff.

Deposition objected to plaintiff's counsel as incompetent and irrelevant.

The Court: What is the purpose?

Mr. F. J. Maffett, for defendant.

We offer this deposition for the purpose of corroborating the testimony of Martin Castner and also for the purpose of accounting for his action and his delay in not making an applica-

tion to open this judgment at an earlier date; to show that John W. Reed, as his counsel, advised him at the time not to make an application, and advised him to let the judgment stand until the plaintiff moved in it.

To this counsel for plaintiff object for the reason that the statement was made (they say) for effect on the jury, counsel for defendant knowing that the testimony is irrelevant and incompetent. Further, the deposition itself is objected to as incompetent and irrelevant.

The Court: The objection of the plaintiff is sustained as to parts of the deposition but overruled as to that portion of the deposition which relates to Mr. Reed's advice that it was not necessary to proceed to open the judgment until, in substance, the plaintiff would either undertake to collect it or to revive it—would take some action. We will permit defendant to read the deposition so far as Martin Castner's declarations are concerned, as to that note being a forgery. We do not think that is competent evidence (as to the note itself), but merely to show the fact that Martin Castner then claimed it was a forgery and denied the execution of the note, in connection with the advice given by Mr. Reed, not as corroborative of Martin's testimony in any way as to the allegation of forgery in this case. Understand, the deposition is limited to the fact of the advice given by Mr. Reed, as counsel, to Martin Castner in regard to his proceeding to contest.

Counsel for the plaintiff except to the ruling so far as it admits any portion of the deposition, and at their request a bill of exceptions is sealed by the court.

Deposition admitted, to which exception is taken by counsel for plaintiff, and read to the jury, as follows:

" Q. Have you or have you not any recollection of meeting the defendant, Martin Castner, in the prothonotary's office in Clarion, Pa., at some time in the year 1893 or 1894, when he requested you to examine for him the records in said office in relation to a judgment against him? If so, state fully when it was as near as you can fix it, and what you said to Martin Castner concerning it, or advised him to do about it. A. Martin Castner, the defendant in this case, consulted me about this judgment; I cannot fix the time; he apparently wanted to know whether such judgment in fact was entered against

him.   I examined the record and found the judgment and
either showed it to him or told him about it.   My recollection
is that he then said it was all wrong.   The substance of his
statements to me was that he never signed the note on which
the judgment was confessed nor authorized any one to sign it
for him, and that he knew absolutely nothing about it.   In
short, from his statements, his son and codefendant in the
judgment had forged his, Martin Castner's, name to the note.
I said to him, 'If you make an application now to strike off
this judgment on the grounds of forgery, the probabilities are
your son will be prosecuted for forgery and sent to the peni-
tentiary.' . . . ."

(Here follows first sentence ruled out by the court.)

" He said that he would not pay it and manifested a dispo-
sition to have it taken off the record.   I said to him, 'It has
about three years to run before it will be necessary to revive it,
and in the mean time your son may pay it off and that will save
you both trouble.'

" I further told him he wasn't bound to act in the matter then
and at least not before there was an attempt made to revive
the judgment or to enforce its collection by execution.

" I advised him to go home and do nothing until there was an
attempt made by the plaintiff to either collect or revive the
judgment, and then he could come to us and we would look
after the business for him and tell him what to do."

13. The court erred in overruling plaintiff's objection to the
testimony of Joseph Castner, as to what his father, Martin
Castner, said to the sheriff when he came with the execution
in this case, to wit :   " Q.   What did your father say?   A.   He
was talking to the sheriff; when I heard him speaking to the
sheriff—that he never signed it; it was not to me that—I
meant."   Counsel for the plaintiff ask that the preceding answer
in which the witness gave the conclusion of what was said, be
stricken out.   The Court : Objection is overruled ; the witness
stated that as a fact.   Exception and bill. .

14. The court erred in sustaining the defendant's objection
to the testimony of Martin Castner on cross-examination,
relative to his discovery of the judgment in controversy upon
the docket.   " Q.   State Mr. Castner, whether after seeing this
judgment on the docket, you made any inquiry of J. P. Castner

concerning it, and if you did, when." Objected to as not a cross-examination. Objection sustained. Exception.

16. The court erred in sustaining the defendant's objection to the same witness immediately following the above, to wit: "Q. Mr. Castner, did you see J. P. Castner about the spring of 1892?" Objected to as not a cross-examination. Objection sustained and exception.

17. The court erred in admitting the testimony of Joseph H. Patrick, Esq., taken on the former trial of the case.

Defendant offers testimony given by Joseph H. Patrick, Esq., on the former trial of this case, at February term, 1900, as contained in the certified transcript of notes of trial.

It being admitted that Mr. Patrick is dead and that he was the original attorney for the plaintiff, and that at the time his testimony was taken, he was assisting in the trial of the cause.

Objected to by counsel for plaintiff as incompetent. The witness proposed to be contradicted, Peter Walley, being alive and residing in the county, and having been subpœnaed by both plaintiff and defendant, and been in attendance every day of this trial until to-day, and could have been called at any time by the defendant and interrogated concerning the testimony proposed to be offered. And further, the deposition of Peter Walley was read on Tuesday of this week.

It is admitted by counsel for plaintiff that the certified transcript of testimony given by Joseph H. Patrick, Esq., on the former trial of this case, at February term, 1900, as now offered is a correct copy of his testimony, made from the original shorthand notes of trial.

The Court: It is admitted by counsel that Peter Walley was subpœnaed on both sides of this case; that he was in attendance at court at least as late as yesterday; that he had been called on the part of the defendant for the purpose of cross-examining him with relation to what Mr. Patrick has testified to which is now about being offered in evidence; and that he is not now present in court. We think, for the reasons heretofore stated by us, this testimony should be read. We will give Peter Walley the privilege of coming in and testifying hereafter, if he wishes, to contradict the testimony of Mr. Patrick.

Counsel for plaintiff except to the ruling and at their request a bill of exceptions is sealed by the court.

18. The court erred in admitting the testimony of Martin Castner, defendant. "Q. Do you remember the time that Sheriff Steltzer came up to your place with the writ in this case? A. Yes sir. (This was in 1895.) It is admitted that John Yeany, the former plaintiff in this case, died, April 11, 1900. Counsel for plaintiff object to any testimony from this witness relating to anything that occurred prior to the death of John Yeany, as incompetent. Defendant's counsel state they are going to contradict Mrs. Mettie Castner, only. Objected to by plaintiff's counsel, as that would be asking for a fact prior to the death of John Yeany. The Court: We are inclined to think it is competent. The objection is overruled. Exception and bill. Q. Mr. Castner, state if on that evening the sheriff was there, you stated to Mrs. Mettie Castner, Matthew's wife, that you had signed the Yeany note. A. No, I did not."

19. The court erred in overruling plaintiff's objection to the testimony of Matthew A. Castner in direct examination. Recalled on behalf of defendant in chief, to wit: Q. Were you present in Mr. Patrick's office the first week of court in which this case was tried before? A. I was. Q. Did you hear the conversation there between Mr. Patrick and Mr. Walley? A. I did. Q. Will you just state to the jury what that conversation was as near as you can? Objected to by plaintiff's counsel as irrelevant and incompetent. The Court: The objection is overruled. Exception and bill. A. Well, as near as I can recollect, Mr. Patrick asked him in regard to those notes. Q. What notes? (Question objected to by plaintiff's counsel as leading and incompetent. Objected to further as it is apparent the witness is stating his conclusions, and not giving the language used by Mr. Patrick.) The Court: We will admit the question. Q. What note? A. The Magee note. Q. Now, then when Mr. Patrick asked him about the Magee note, what did he say? A. He said he never saw him sign it up in that room—the sitting-room in the hotel up there.

20. The court erred in overruling the plaintiff's objection to the testimony of I. J. Keck. Direct examination by B. J. Reid: Mr. Keck, you are one of the commissioners of Clarion

county?   A. Yes, sir.   Q. How long have ·you been in that position?   A. This is the fourth year.   Q. You are familiar with the practice in that office as to assessments ?   A. Yes, sir. Q. I show you bound book, marked on the cover, " Farmington Township, 1893, C. H. Ritts, Assessor."   Look at the book and state whether or not that is a record of the persons and property assessed for taxes for state and county purposes in Farmington township for the year 1893 ?   A. It is.   It is the assessment book for Farmington township for the year 1893.   Q. State from what book the duplicate of taxes made out in the commissioners' office and given to the treasurer for collection of taxes is made ?   Objected to by plaintiff's counsel as incompetent and irrelevant to the issue trying.   Mr. B. J. Reid for defendant : The purpose of the offer is to show that Martin Castner had no notice of his being assessed with this judgment given in evidence on the part of the plaintiff in his favor against J. P. Castner' on a note dated April 2, 1892, for $1,000, by an assessment or demand made in the year 1893.   Q. State whether that is the record of the assessment kept in the commissioners' office. A. It is.   The Court: The objection is overruled.   Exception and bill.

21. The court erred in admitting in evidence the book identified by I. J. Keck, as stated in the preceding assignment, to wit : Defendant offers in evidence book identified by the witness and marked " Farmington Township, 1893, C. H. Ritts, Assessor."   Objected to by plaintiff's counsel as incompetent and irrelevant.   The Court: We think the book is sufficient proof and we admit it as evidence in this case.   The objection is overruled.   Exception and bill.   (Entry from assessment book read.)   " No. 71. Castner, Martin.   Acres of cleared land, 81 ; total acres, 81 ; value, $1,200.   Horses, 2, value $140; cows, 3, value, $30.00.   Occupation, farmer.   Total amount, $1,370. One dog."   Under head of money at interest blank.   Objected to by plaintiff's counsel.   If it is competent for any purpose, it is only competent to show that there is no money at interest taxed to Martin Castner, and counsel is not entitled to read to the jury what he is assessed with.   The Court: The objection is overruled for this reason : That the offer and admission of the assessment, for the purpose for which it is offered, can only show in regard to the assessment of any taxes upon judgments against

Martin Castner by the reading of that record. It is limited to the purpose of showing whether or not Martin Castner was assessed with any money at interest at that time. Exception and bill.

22. The court erred in overruling the plaintiff's objection to the testimony of Mr. Toomey. "Q. Mr. Toomey, I show you paper marked exhibit 'AA,' dated North Pine Grove, May 8, 1890, signed D. F. McDonald and Martin Castner. Mr. B. J. Reid for defendant: We now propose to ask the witness whether he saw Martin Castner sign his name to the paper for the purpose of proving the genuine signature of Martin Castner, how he allowed his name, and how he spelled his name, and also as a test paper. Objected to by plaintiff's counsel as incompetent and irrelevant in this issue. The Court: Objection is overruled. Exception and bill. A. Yes, I saw him write it."

The court erred in striking out the following testimony of James Pinks given in rebuttal, when testimony closed, to wit:

The testimony of James Pinks, stricken out, and here complained of is as follows: "Q. State if that book I now show you is the book made by the assessors? A. This is the book which was offered in evidence by the defendant and is marked 'Assessment Book of Farmington Township for 1893, C. H. Ritts.' Q. Is this the book made by the assessors? A. It is not. Q. What is it? A. It is a copy made by Mr. Willis H. Kerr, I believe."

Defendant's counsel move the court to strike out the testimony of James Pinks, given in rebuttal, the same being incompetent and irrelevant to affect the issue trying in this case.

Objected to by plaintiff's counsel, who allege that the testimony is relevant and competent for the purpose of rebutting the assessment book of Farmington township for 1893, which was offered by the defendant and was admitted in evidence.

The Court: We will grant the motion. Counsel for plaintiff except to the preceding ruling and at their request a bill of exceptions is sealed by the court.

24. The court erred in striking out the following testimony of J. B. Flack, the expert:

Defendant moves the court to strike out from the evidence the testimony of Mr. J. B. Flack, the expert, and to instruct the jury to disregard it, for the reason that his testimony was

based wholly on plaintiff's exhibit " B," the Magee note, as a test paper, and said exhibit has now been ruled out by the court.

Objected to by plaintiff's counsel for the reason that the evidence referred to is competent and relevant.

The Court: The objection is overruled and the motion granted. Counsel for plaintiff except to the preceding ruling and at their request a bill of exceptions is sealed by the court.

The testimony stricken out and here complained of is: " Q. Mr. Flack, state where you live, please.   A. I live in the city of Pittsburg.   Q. State what your occupation is. A.  I am a handwriting expert.   Q. How long have you so been engaged?   A. For over twenty years, in the courts of Western Pennsylvania, Eastern Ohio and elsewhere.   Q. You may state the extent of your experience in that line of work, as to whether frequent or otherwise, during your exercise of your calling.   A. Well, quite frequently.   I examined four sets of papers last week.   I was four days at Williamsport for the government, on a case.   Q. Have you practiced your profession in the courts of Pittsburg?   A. Yes, in all the courts— civil, criminal, orphans' court and the United States court. Q. Have you practiced in different states?   A. Yes, in Eastern Ohio and through Western Pennsylvania generally. Q. What cities have you been in, to testify?   A. I have been in, besides Pittsburg, Washington county, Greene, Somerset, Indiana, Cambria, Fayette, Armstrong, Butler, here several times, in Clarion, Beaver and Jefferson counties, in Western Pennsylvania.   I have been in Canton, Columbus, Ohio—Warren, Lisben, Cleveland, Steubenville.   Q. Mr. Flack, I show you exhibit 'B,' which is known as the Walley note, and also the note in suit, exhibit 'A.'   Please state if, as an expert, you are able to say that the note known as the Walley note was written by one person—I mean the last signature, 'Martion Castner,' and the note in suit.   That is, if the note in your hand, Exhibit " B," was written by one person and another person held his hand, both holding the pen?   Can you tell whether the note in suit, exhibit 'A,' was written by the same person? Mr. Reid for defendant."

We object to the question as incompetent.   The evidence on the part of the plaintiff showing that the signature to ex-

hibit "B," was not made by Martin Castner but by another person. Martin Castner merely touching the top of the pen, it is incompetent to make any comparison of this signature with the signature to the note in suit, for the purpose of showing that they were written by the same person. It might be competent to show that the signature "Martion Castner" was written by John P. Castner, but to show it was written by Martin Castner is incompetent, under plaintiff's evidence.

The question is further objected to for the reason that there is no evidence in this case showing, or tending to show, that the signature of "Martion Castner" to the note in suit was made by the joint action of John P. Castner and Martin Castner.

The Court: We will hear the evidence and rule on it afterwards; we have not time to hear any more argument now.

Counsel for defendant except to the ruling and at their request a bill of exceptions is sealed by the court.

A. Taking exhibit "B," the Magee note, the writing of the name "Castner," which appears twice here, is written, the upper one, at a rather low angle, while that below is almost vertical. Now, being written by the same person under peculiar conditions this indicates to me that those conditions changed the angle of the writing so that the writing is not merely the writing of J. P. Castner but is a combination of the two. Now, I find the same thing in exhibit "A," or the note in dispute. These two signatures of "Martion Castner" are so much alike that I feel satisfied they were made under the same conditions.

The capital "C" in Castner is written vertically and is almost identical, that is, the "C" in Castner in exhibit "B" is almost identical with the "C" in Castner in exhibit "A," the note in dispute.

Again, taking the terminal syllable "ner," that is written separately, disconnected in both cases; and the "e" in both cases (which I can make more distinct to you than by any description) the "e" in Castner is written vertically, as will be seen in both cases, as compared with the "e" immediately above. The "e" in the lower Castner in both cases is written vertically as compared with the "e" in Castner above it.

The writing of the two signatures Martion Castner is the

same. There is the same form of the small " a " following " M," in both cases. The name Martion is written in two groups— M-a-r-t-i-o-n, in both cases. The two names, Martion Castner, are so much alike and at the same time so different from J. P. Castner, that they must have been written under the same conditions.

" Q. Anything further you wish to say ? A. No, there is nothing further. Q. Then your conclusion is what ? A. That they were written by the same person, under the same conditions. Q. That is your conclusion, is it ? A. That is my conclusion.

Cross-examination by Mr. B. J. Reid.

" Q. Mr. Flack, your conclusion is that the hand that guided the pen in exhibit ' A ' was the same hand that guided the pen in exhibit ' B ? ' A. Yes. Q. In the signature of ' Martion Castner ? ' A. Yes."

Redirect examination by Mr. J. T. Maffett.

" Q. As an expert, Mr. Flack, what does it indicate when there is no variation of any kind between two signatures ? A. That one is made from the other. That is the direct inference ; although possibly one in sixty thousand times, say, it has been calculated, two signatures may agree. Q. Made by the same person ? A. Yes. Q. As a rule do men's own signatures differ in some respects, even as to every letter ? A. They do, the signatures differ more or less all along. Q. And the letters ? A. The letters. The difference may be very slight, however. Q. Mr. Flack, take exhibit ' B,' the Magee note, and look at the color of the ink, as to the witness and as to the signatures, and state if there appears to be a difference. A. There is not an appreciable difference more than would be produced by an empty pen. Q. Does a pen almost empty make a different colored signature ? A. Yes, it does. Q. With the same ink ? A. With the same ink, I made a test of that. Q. Will you show the jury the test you made ?"

Defendant's counsel objects to a test paper being shown the jury.

" A. This is a paper I made myself. I wrote in Mr. Hindman's office, the first name ; then laid the pen down and let it lie for four or five minutes ; picked it up and wrote again. Q. What paper is this ? A. That is a tracing of the signature

of Martin Castner on exhibit 'B.' Q. Who made it? A. I
made it. Q. When? A. Yesterday, I think. Q. I would
like you to exhibit that to the jury, Mr. Flack?"

Objected to by defendant's counsel as not evidence.

" A. The purpose of the tracery is to lay one signature over
another and compare them in that way. Q. This is a signature
traced from exhibit 'B,' and I wish you to show to the jury
by putting it over the two signatures, how much alike they
are."

Objected to by defendant's counsel.

25. The court erred in striking from the evidence plaintiff's
exhibit " B," the " Magee note," to wit: Defendant's counsel
move the court to strike from the evidence plaintiff's exhibit "B,"
being the " Magee note," the signature " Martion Castner"
thereon not being a satisfactorily proven, genuine signature of
the defendant in this case, and therefore, not a properly proven
test paper.

Motion objected to by plaintiff's counsel, the note exhibit " B "
having been offered as a test paper along with the testimony of
Peter Walley, to be submitted to the jury for them to pass
upon, it being the function of the jury to pass on the evidence
when a paper has been proven by the witness who saw it writ-
ten, and not the province of the court—and exhibit " B " hav-
ing been, prima facie, proved.

Objected to further, for the reason that in the testimony of
Martin Castner taken on the former trial of this case, in March,
1898, his attention was called in chief to the note exhibit " B,"
(being the Magee note which was marked exhibit " No. 2 " on
that trial), and the note was shown him as appears by the fol-
lowing testimony, which has been offered on this trial by the
defendant:

Martin Castner, the defendant, re-called in surrebuttal. Di-
rect examination by Mr. Reed: " Q. Mr. Castner, I show you
note marked ' plaintiff's exhibit 2.' Look at that note, and the
name, ' Martion Castner,' and state whether that was written
by you. A. No; I never write my name that way."

The testimony of Martin Caster, which was called out by the
defendant on the former trial of this case, having now been of-
fered in whole by the defendant without any reservations, and
the note, exhibit " B," (exhibit " 2 " on the former trial) hav-

ing been shown Martin Castner, it has thereby been made competent as a test paper.

The Court: We will grant the motion of defendant and strike out the test paper, exhibit "B."

When we received this paper in evidence, we had a doubt as to whether the plaintiff had offered sufficient evidence to justify the court in admitting it as a test paper. The only evidence offered on the part of the plaintiff is that of Peter Walley, taken by deposition, and it is of such an uncertain character that it leaves a doubt in our mind as to the paper being sufficiently proved.

The rule is that all test papers should be proven to the satisfaction of the court. It may be admitted that the question raised here is a very close one. If the name of " Martion Castner," signed to this exhibit "B," was written by Martin Castner, placing his hand upon that of J. P. Castner, it might as well be shown by evidence that the signature was made under the direction of Martin Castner to that particular instrument.

We do not think it is proper to admit the note exhibit " B," and we think it would be a dangerous precedent to establish for the offering of expert testimony, to say that the signature to the note in dispute was made under similar conditions.

If we are in error, we can be reversed, and we will be glad to be reversed if we are in error. If our convictions ran the other way we would not make this ruling.

Counsel for plaintiff except to the preceding rule, and at their request a bill of exceptions is sealed by the court.

26. The court erred in its charge to the jury, in saying: "Bearing upon the question of the burden of proof in a case of this character, we say to you that in this case, the suit being upon the note in controversy, and the plaintiff claiming to recover upon it, it is his duty to prove it against all attacks, and the burden remains on him throughout the case. Burden of proof and weight of evidence are two very different things. The burden of proof remains on the plaintiff in support of his case and does not change in any aspect of the case. The weight of the evidence may shift from side to side in the progress of a trial, according to the nature and strength of the proofs offered in support or denial of the main facts to be established."

27. The court erred in its charge to the jury, saying: " Then

we have a number of test papers involved, which have been testified to by Martin Castner, W. C. Reyner, S. H. Reyner, Paul E. Meisinger, Willis H. Herr, Matthew Castner, Michael Toomey and J. J. Greenawalt.   Defendant has offered a number of exhibits,—'AA,' 'BB,' exhibit '1,' which is the will of Martin Castner; exhibit 'C,' the bond; exhibit 'D,' an application for license of P. and T. Walley; exhibit 'E,' an exhibit of J. P. Castner for license; exhibit 'F,' supplementary petition; exhibit 'G,' bond of J. P. Castner; exhibit 'H,' the same; exhibits 'I,' 'J,' 'K,' 'L,' and 'M,' tax returns of Martin Castner; the deposition of Martin Castner taken before S. H. Reyner; also notice of same; name of Martin Castner in hotel registers, Nos. 1, 2 and 3 of Paul E. Meisinger, under date of March 14, 1894, July 30, 1894, July 30, 1894, August 13, 1894, August 13, 1895, August 17, 1896, May 28, 1898, August 26, 1898, September 17, 1898, and October 24, 1898. These exhibits were offered as test papers of the genuine signatures of Martin Castner."

28. The court erred in its charge to the jury, saying: "Now, gentlemen, it is your duty to take these different signatures that we have referred to, and to compare them with the signature of the note in controversy, and to say from that whether the name 'Martion Castner' to the note in suit is genuine or a forgery."

29. The court erred in its charge to the jury, saying: "Gentlemen: We cannot possibly go over all the evidence in this case.   We have given you the names of those witnesses that testified to the handwriting of Martin Castner on a number of these exhibits; some of the exhibits were testified to by several witnesses and some perhaps by only one.   They will all go out with you.   This rule that where a person sees a man write his name a single time, if he says he is acquainted with the handwriting, why it is evidence.   Witnesses have testified to these different exhibits; in some instances have proved certain exhibits to be in the handwriting of Martin Castner, and there is no dispute as to that fact,—nothing to contradict it; so that we can say that the 'several exhibits that have been offered are sufficiently proven to show that they are genuine signatures and you are to use them in deciding and passing upon the genuineness of the signature to the writing in suit; you are to

make that comparison and say from an examination of the signatures in these different exhibits, whether the signature of Martin Castner to the note in suit is the defendant's signature."

30. The court erred in its charge to the jury, saying : " Now, we call your attention to another matter, that is, exhibit ' B,' the Magee note. That is ruled out as a test paper, and you will have no right to compare it with the signature of the note in suit. Understand that, gentleman, distinctly. This note is only admitted for a certain purpose, and limited to that, in connection with the testimony of Peter Walley, and goes more to the point as to whether a note was ever signed by Martin Castner, in the name of Martin Castner, so that you will bear in mind and not use that note in any way for that purpose."

31. The court erred in its charge to the jury, saying : " But it will be for you to consider all of the evidence bearing on the signature and to make a comparison from the writings that are admitted or proved to be genuine of Martin Castner with the respective alleged signature of Martin Castner on the face and back of the note. You will recollect that there were a number of witnesses who testified to being acquainted with the handwriting of Martin Caster, who said that the signature of ' Martion Castner ' to the note in suit, and on the back of the note, are not in his handwriting."

32. The court erred in its answer to plaintiff's first point, to-wit : which point is as follows : " If Martin Castner, the defendant, was able to produce on the trial of this case any facts or evidence to sustain him, or to show how his name came to be on the note in suit, and did not do so, the presumption is that such evidence or witness, if produced, would be against him." The answer of the court was : " We refuse this point under all the evidence."

33. The court erred in its answer to defendant's first point, to wit: " Even if the jury should believe from the evidence that Martin Castner signed or authorized his son, John P. Castner, to sign his name to the Magee note (plaintiff's exhibit ' B '), or hold his hand on the hand of his son when the latter wrote the name, ' Martion Castner,' to said note, such evidence would not warrant the inference that the Yeany note was signed or authorized by Martin Castner in any of the three modes above mentioned. *Answer :* Affirmed."

34. The court erred in its answer to the defendant's second point, to wit: "A forged instrument cannot be ratified by the party whose signature has been forged, and, therefore, no act, declaration, delay, or omission on the part of Martin Castner would make him liable on the note in suit, unless the jury find from the evidence that at the time of the making of the note, his name was signed to it by himself, or someone else by his authority. *Answer:* Affirmed."

35. The court erred in its answer to the defendant's fifth point, to wit: "The burden is on the plaintiff and remains on the plaintiff throughout the whole case to satisfy the jury by a preponderance of the evidence that Martin Castner either signed the Yeany note in suit, or authorized the signing of his name to said note before it was delivered to McComb & Clarke, and unless the jury find from a preponderance of the evidence that Martin Castner did so sign or authorize the signing of said note, the note is a forgery, and the verdict must be for the defendant. *Answer:* Affirmed."

36. The court erred in its answer to the defendant's sixth point, to wit: "Under all the evidence in this case, if the jury do not believe the evidence of Mettie Castner that Martin Castner told her, or in her presence, that he had signed the Yeany note, the verdict must be for the defendant. *Answer:* Affirmed."

*J. T. Maffett* and *W. A. Hindman,* for appellant, cited as to the admission of the note and as to the burden of proof: Scott's App., 123 Pa. 155; Zaring v. Earley, 2 Pearson, 352; Earley's App., 90 Pa. 321.

Cited as to the amendment; Fox v. Foster, 4 Pa. 119.

Cited as to the res gestæ: Potts v. Everhart, 26 Pa. 493; Gilchrist v. Bale, 8 Watts, 356; Elkins, etc., Co. v. McKean, 79 Pa. 501; Tompkins v. Saltmarsh, 14 S. & R. 280; Deardorf v. Hildebrand, 2 Rawle, 226; Cattison v. Cattison, 22 Pa. 275; York Co. Bank v. Carter, 38 Pa. 446.

Cited as to the previous declarations of defendant: Quigley v. Swank, 11 Pa. Superior Ct. 602; Clever v. Hilberry, 116 Pa. 431; Jacoby v. Westchester Fire Ins. Co. of New York, 10 Pa. Superior Ct. 171.

Cited as to the range of cross-examination: Perit v. Cohen,

4 Whart. 81; Leonard v. Wynn, 1 W. N. C. 189; Arnold v. Macungie Savings Bank, 71 Pa. 287.

Cited as to the comparison of handwriting: First National Bank of Easton v. Wirebach, 106 Pa. 37; Berryhill v. Kirchner, 96 Pa. 489; Knarr's Appeal, 19 W. N. C. 533.

*B. J. Reid* and *A. A. Geary,* with them *F. J. Maffett,* for appellee, cited as to sufficiency of evidence: Jenkintown Nat. Bank's App., 124 Pa. 337; Steel Iron Co. v. Jacobs, 9 Pa. Superior Ct. 122; Darragh v. Bigger, 172 Pa. 89; Klopfer v. Ekis, 155 Pa. 41; Stockwell v. Webster, 160 Pa. 473; Cloud v. Markle, 186 Pa. 614; Heist v. Tobias, 182 Pa. 442; Pfaff v. Thomas, 3 Pa. Superior Ct. 419; Walter v. Fees, 155 Pa. 55.

Cited as to the amendment: Stephens v. Stephens, 1 Phila. 108; Bishop's Appeal, 26 Pa. 470, 471; Milne's Appeal, 99 Pa. 483; Hambleton v. Yocum, 108 Pa. 309; Silberman v. Shuklansky, 172 Pa. 77; Nimick's Estate, 179 Pa. 591.

Cited as to the res gestæ: Mueller's Estate, 159 Pa. 590.

Cited as to the question of refreshing memory: First Nat. Bank of Du Bois v. First Nat. Bank of Williamsport, 114 Pa. 1.

Cited as to the waiver of objections to depositions: Higgins Carpet Co. v. Latimer, 165 Pa. 624.

Cited as to effect of advice of counsel: Cole v. High, 173 Pa. 590; Vankirk v. Penna. R. R. Co., 76 Pa. 66; 1 Greenleaf on Evidence, sec. 101; Hartshorne v. Campbell, 1 Yeates, 143; Gilchrist v. Bale, 8 Watts, 356, 357; Klein v. Franklin Ins. Co., 13 Pa. 249.

Cited as to the contradiction of Walley: Sharp v. Emmet, 5 Wharton, 288; Kay v. Fredrigal, 3 Pa. 221; Walden v. Finch, 70 Pa. 460; Rothrock v. Gallaher, 91 Pa. 108; Com. v. Cowan, 4 Pa. Superior Ct. 579.

Cited as to the comparison of signature: Cohen v. Teller, 93 Pa. 123; Baker v. Haines, 6 Wharton, 248; Depue v. Place, 7 Pa. 428; Aumick v. Mitchell, 82 Pa. 211; Berryhill v. Kirchner, 96 Pa. 489; Ballentine v. White, 77 Pa. 20; Buckholder v. Plank, 69 Pa. 225.

OPINION BY RICE, P. J., October 13, 1902:

1. The unsupported testimony of a defendant in a confessed

judgment admitting the execution of the instrument upon which the judgment was entered, but alleging fraud in the procure ment or use of it, which is directly opposed by the testimony of the plaintiff, is insufficient to warrant the opening of the judgment or to be submitted to the jury on the trial of an issue awarded. In such a case the conflict of testimony is over the equity which the defendant sets up as the ground for relief from a legal liability he has assumed. The instrument itself is evidence against him, and therefore, both upon reason and authority, he must overcome the prima facie presumption arising from his own act, and establish his allegation by the quantum and character of proof required to move a chancellor to make a decree in his favor, or be left where he has placed himself under the law. And though the defendant testifies that his signature is a forgery, and there is opposing testimony, there is no inflexible rule which compels the court to open the judgment. Even in such a case the judge should exercise a sound discretion, after a careful consideration of the character and effect of the testimony: Roenigk's Appeal, 2 Cent. Repr. 68; Essick's Appeal, 1 Mona. 588. Nevertheless there is a plain distinction, it seems to us, between such a case, where the paper itself does not go into the scales against him, and a case where the testimony of the defendant is opposed by that of the plaintiff and the latter is aided by the presumptions arising from an admittedly genuine paper. And the distinction was clearly recognized in the recent case of Schomaker v. Dean, 201 Pa. 439, where the court went farther than we are required to go in the present case in sustaining the order opening the judgment. The case before us is not a case of oath against oath merely, but the testimony of the defendant was supported by other testimony to such an extent as to bring the case fairly within the rule laid down in Jenkintown Nat. Bank's Appeal, 124 Pa. 337, and the later cases.

2. Where a judgment entered upon a warrant of attorney is opened generally and without terms, the plaintiff is put to proof of his cause of action "precisely as if no judgment had been entered:" Sossong v. Rosar, 112 Pa. 197; Harris v. Harris, 154 Pa. 501. When it is opened upon an allegation of forgery it is not usual to impose as one of the terms that the instrument alleged to be forged shall " be offered and read on the trial of the

case as a prima facie case for the plaintiff," as was done here. Nor were there any exceptional circumstances in this case which required the imposition of such terms.    The utmost that can be claimed is that the court had discretionary power to include this in its order; it cannot be claimed that it was its duty to do so. But if in its discretion the court might have omitted it, it seems clear that it could reconsider the question and amend the original order by striking it out.    The amendment was made after due notice and full consideration, and, though made after a trial had been had and a new trial granted, we cannot see that there was any abuse of discretion.    Therefore, we would not be warranted in reinstating that part of the original order, which the learned judge declared was inadvertently made.

3. Where declarations or acts accompany the fact in controversy and tend to illustrate or explain it, they are treated, not as hearsay, but as original evidence, in other words, as part of the res gestæ.    In this case the fact in controversy was the genuineness of the signature, "Martion Castner," to a note purporting to be signed by him and J. P. Castner.    The parties to the issue were the executor of the payee and Martin Castner.    The court permitted the plaintiff's witness to testify that the note was given for a loan to J. P. Castner, that it was drawn by the witness and signed by J. P. Castner in his presence, that it was taken away by the latter and subsequently returned by him with the name "Martion Castner" added. The plaintiff further offered to show by the same witness what was said at the time the note was taken away by J. P. Castner, what the condition was upon which the loan was made to him, what was done during the negotiations relative to the examination of the record as to Martin Castner, and whether upon the return of the note the attention of J. P. Castner was called to the manner in which "Martin" was spelled.    He also offered to prove by another witness that the money loaned to J. P. Castner was applied by the latter upon another note of which Martin Castner was joint maker with him.    We fail to see how the acts and declarations thus offered to be shown, standing alone, illustrate, explain or throw any light upon the fact in controversy.    There being no accompanying offer to bring home knowledge of them to Martin Castner or to show

that he authorized them, the evidence was irrelevant to the issue, and was properly rejected.

4. The extent to which a party may go in cross-examination for the purpose of testing the accuracy of recollection, the interest or the bias of an opposing witness rests largely in the discretion of the trial judge, and the appellate court will not reverse because of the admission of questions asked for that purpose, unless there has been a very plain abuse of discretion to the injury of the party complaining. The fact that an expert witness is to receive, or has received, per diem compensation beyond the legal witness fee does not affect his competency as a witness, and it may have very slight bearing upon the question of his impartiality. Nevertheless, his relation to the party calling him may be such as to warrant the jury in taking it into consideration in weighing his testimony. Therefore, it is not reversible error to permit cross-examination upon that subject within reasonable limits, which we think were not exceeded in this case by the questions referred to in the ninth assignment of error. See Commonwealth v. Farrell, 187 Pa. 408.

. 5. The general rule limiting cross-examination to the matters elicited in the examination in chief does not exclude questions as to declarations or conduct naturally tending to show the improbability of statements made in the examination in chief. Of this nature were the questions put to Martin Castner which are quoted in the fourteenth, fifteenth and sixteenth assignments. We overrule these assignments, not because the questions were not legitimate cross-examination, for we think they were, but because substantially the same questions were put to and answered by the witness in other parts of his testimony.

6. Mettie Castner, a competent witness called by the plaintiff, testified that in a conversation between her and the defendant the latter admitted that he had signed the note in controversy. When the defendant was called to contradict her, objection was made upon the sole ground that this conversation took place prior to the death of John Yeany, the payee in the note and original plaintiff in the issue. All the elements requisite to bring the case within the operation of the Act of June 11, 1891, P. L. 287, being present, the objection was

properly overruled: Rudy v. Myton, 19 Pa. Superior Ct. 312.
The additional objection which the counsel now raise goes to
the form of the question, is without real merit and comes too
late: Gorman v. Bigler, 8 Pa. Superior Ct. 440.   There never
was a plainer case for holding a party complaining on appeal
of the admission of evidence objected to in the court below to
the specific objection made to it there.  See Danley v. Danley,
179 Pa. 170, Fisher v. Ruch, 12 Pa. Superior Ct. 240, and
cases there cited.

7. By reason of testimony of Mettie Castner, not necessary
to be recited here, it became important for the defendant to
show that she and her husband Matthew went to housekeeping
at Blacks Corners prior to June, 1895.  For that purpose Mi-
chael Toomey, a merchant, was called and permitted to testify
that it was about the time he sold them a bill of goods, and to
refresh his recollection as to the date was permitted to refer to
his books of account in which the items were charged.  This
was clearly competent: First Nat. Bank of Du Bois v. First
Nat. Bank of Williamsport, 114 Pa. 1.  His examination upon
the subject might well have ended there, but no possible harm
resulted to the plaintiff from permitting him to enumerate the
articles after refreshing his recollection by reference to his
books.   There is no merit in the tenth assignment.

8. The plaintiff offered in evidence the deposition of one
Peter Walley, taken on the rule to open the judgment.   Wal-
ley was living at the time of trial and was present in court part
of the time, but it appearing to the court from his preliminary
examination that his mental condition was not such as to en-
able him to testify, the deposition was permitted to be read.
His testimony was to the effect that he had seen Martin Cast-
ner sign a certain note which the plaintiff desired to use in the
trial as a test paper.   Later in the trial the defendant offered
to contradict and impeach the witness by proof of his declara-
tions made after his deposition was taken, to the effect that he
had never seen Martin Castner sign any note.   The objection
was made that he had not first been examined as to these
declarations and given an opportunity to explain them.  But
how could the plaintiff raise that objection when, by his own
showing, the witness was unable to testify?   Moreover, the de-
fendant attempted to comply with the rule but was prevented

from doing so by the fact that Walley had left the court without permission. In view of all the circumstances to which we have alluded, the court exercised its discretion properly in overruling the objections and admitting the testimony referred to in the seventeenth and nineteenth assignments of error. " The right to discredit a witness by proof of contradictory statements without first calling his attention to them in order that he may have an opportunity to explain or reconcile them is a subject on which our decisions have not always been uniform, but it is now settled by the later cases that the question is one of sound discretion in the judge trying the case, upon the circumstances before him: " Cronkrite v. Trexler, 187 Pa. 100 ; Commonwealth v. Cowan, 4 Pa. Superior Ct. 579. " In this case the rule, which is based largely on a regard for the witness himself, could not have been enforced without sacrificing the interest of the party. The court was clearly right in refusing to enforce it at such a sacrifice: " Baldi v. Metropolitan Ins. Co., 18 Pa. Superior Ct. 599. The same may be said with equal appropriateness in the present case.

9. It appears that when this note was given, another judgment note for the same amount was drawn in favor of Martin Castner and signed by J. P. Castner. This was intended to secure the former and judgment was entered upon it, but not by Martin Castner, in 1892. It became a matter of importance in the trial to determine when he first had notice of the transaction. To repel any inference that he must have got notice of it as early as 1893 through the assessment of taxes, the defendant was permitted to show that he was not assessed with taxes upon money at interest in that year. This we understand to have been the purpose of the offers which are referred to in the twentieth and twenty-first assignments of error. We cannot say that this was a wholly irrelevant fact, nor that the book referred to in the assignments was not sufficiently proved in the first instance to warrant its admission in evidence for that purpose. The twenty-third assignment may appropriately be considered in this connection. When James Pinks, a witness called by the plaintiff in rebuttal to prove that the book put in evidence by the defendant was a mere copy of the original assessment book, finally admitted upon cross-examination that it was "the only book from which the duplicate is

made up charging taxpayers with taxes," his testimony in chief became unimportant, and no error was committed by striking out his whole testimony.

10. Martin Castner having become incompetent to testify by reason of the death of John Yeany, the deposition of the former taken in 1895 and used on the rule to open the judgment, when John Yeany was alive, was offered in evidence and objected to upon the ground that it appeared on the face of the deposition that, by the advice of counsel, he had refused to answer a certain question put to him upon cross-examination. It is urged that under the authority of Stonebraker v. Short, 8 Pa. 155, it was the imperative duty of the court to reject the deposition regardless of the special circumstances. Inasmuch as his testimony given on the first trial covering the same ground was read, it is difficult to see how the error, if error there was in permitting his deposition to be read, could have been prejudicial to the plaintiff. But we need not put our decision on that ground. The question which the witness refused to answer, though perhaps proper cross-examination, was of little importance. He had testified in chief that he first saw the note in question when his attorney took him to the office of McComb and Clarke, the plaintiff's attorneys. The question he refused to answer was, whether he went there on business of his own or that of his son. His counsel deeming this illegitimate cross-examination instructed him not to answer. But immediately preceding this he had testified, while under cross-examination: "Couldn't tell whether McComb and Clarke were attorneys for my son, J. P., didn't inquire into such business." Looking at his testimony as a whole it is manifest that the question was answered substantially, and that his refusal to answer it categorically did the defendants not the slightest injury. In Crossgrove v. Himmelrich, 54 Pa. 203, a somewhat similar case, it was held that the admission of the deposition was not error. Still further, it appears that notice of the filing of the deposition was accepted by the plaintiff's attorneys and that they filed no exceptions to it. It is argued with great force that under the rule of court quoted in the bill of exceptions the objection was thereby waived. The court evidently took this view of the matter, and it is well settled that, upon a question of the construction or application of its own rules a

court can be reversed only for manifest and material error. See Kunkle's Estate, in which we have this day filed an opinion, and the cases there cited; also Depew v. Depew, 2 Cent. Repr. 611. The eleventh assignment is not sustained.

11. Judgment was entered on the note in question, as well as upon the indemnity note of J. P. Castner to Martin Castner, in April, 1892. The former note became due in April, 1893, execution was isssued thereon in April, 1895, and a levy made, but the application to open was not made until June 29, of the same year. According to the defendant's own admissions he was shown the records of these judgments by his attorney early in the year 1894, but he gave no notice to the plaintiff or his attorneys that his signature was a forgery, and made no application to see the note until about the time when he moved to open the judgment thereon. The court correctly charged the jury, as requested in the defendant's second point (thirty-fourth assignment), that no act, declaration, delay or omission on his part shown in the present case would make him liable on the note, if his name was not signed to it by himself or by his authority: Henry Christian B. & L. Association v. Walton, 181 Pa. 201, and cases cited. Nevertheless his delay of over a year in moving to open a judgment against him upon a note which he now alleges to be a forgery, and which was overdue when knowledge of the judgment was brought home to him, was a circumstance of considerable significance. This was recognized by both parties; by the plaintiff in his fifth point, which was affirmed, and by the defendant in the introduction of the testimony quoted in the twelfth assignment. The defendant's delay did not estop him, but the circumstance being such as would properly call for some action or declaration from men similarly situated, the jury might very naturally and properly regard it as some evidence of consciousness on his part that the judgment was valid. But if his delay was involuntary, it would not furnish any ground for such inference. So also, if he consulted counsel as soon as he learned of the judgment and the latter advised him to take no action until the plaintiff should move in the matter, the effect of his delay, pursuant to such advice, as evidence of a consciousness on his part that he had no defense to the judgment might be weakened in the estimation of the jury, if not wholly destroyed.

Advice of counsel would not prevent an estoppel, if his acts otherwise created one, nor would it relieve from laches where that was sufficient to bar relief; but we are not prepared to say that it was error to permit it to be proved for the narrow purpose above suggested. It is to be observed, however, that the state of mind of the defendant was not directly in issue; that is to say, proof of what it was was not essential to the plaintiff's case or that of the defendant. The case is not precisely analogous to an action of deceit or for malicious prosecution, or for enticing away a man's wife, in all of which motive and intent are directly in issue. To extend the principles of such cases so far as to permit the defendant, not only to prove that his delay in moving to open the judgment was by advice of counsel, but also to put his counsel on the stand to narrate the facts that he communicated to him when he took his advice, would be unwarranted. " Where it is important to know whether a statement made by a witness on the trial of a cause is of recent fabrication, it is sometimes competent to show that upon some former occasion, when there was no reason to suspect his motives, he stated the matter in the same way as upon the trial: " Clever v. Hilberry, 116 Pa. 431. We are relieved from the necessity of discussing the question whether this rule applies to the case in hand, for the defendant's counsel frankly concede that they make no such claim. If that rule does not apply, and we agree with counsel on both sides that it does not, it was error to admit those parts of the deposition of Judge REED in which the witness recited the facts narrated to him by the defendant. Thereby the fact that the defendant declared to his counsel that his son had forged his name to the note became lodged in the minds of the jurors and it would be difficult to dislodge it. A party to an action or a defendant in a judgment, which he means to contest, cannot make evidence for himself in that way. And although the jurors were told to consider the fact only as an excuse for the defendant's delay, the error was not made harmless, because proof of that fact was not admissible even for that purpose. We would not reverse if the evidence had been confined strictly within the limits heretofore suggested, but because it was not we are compelled to say that this assignment of error is well founded.

The objections to the kind of testimony are very forcibly stated in Clever v. Hilberry, supra, and we need not repeat them.

12. The plaintiff opened the door to the admission of the evidence complained of in the thirteenth assignment by asking and receiving a negative answer to the question put by his counsel to sheriff Stetzler, a witness called by him: "State whether or not Martin Castner made any allegation at that time "—June, 1895, the time of the levy—"regarding the note, or that judgment being a forgery or anything of that kind." If the testimony introduced by the plaintiff was relevant, it was competent for the defendant to contradict it. If it was irrelevant, still the plaintiff is not in a position to complain of the admission of evidence to contradict it: Schriver v. Eckenrode, 1 Penny. 55.

13. One of the rules laid down in Travis v. Brown, 43 Pa. 9, is: "1. That evidence touching the genuineness of a paper in suit may be corroborated by a comparison, to be made by the jury, between that paper and other well authenticated writings of the same party." The Act of May 15, 1895, P. L. 69, changed the law as declared in Travis v. Brown by making it competent for experts to make such comparison, but in nowise changed the law as to the introduction of other well authenticated writings of the same party for the purpose of comparison to be made by the jury. On the contrary, it expressly declares that "the final determination as to whether any particular handwriting is genuine or simulated shall remain, as heretofore, a question for the jury on all the evidence submitted." The signature to the paper offered by the defendant (twenty-second assignment) was sufficiently proved; it was made in 1890, two years before the date of the note in question, and hence was not made with this litigation in view. The fact that the name "Martin" was written correctly and not "Martion" as in the note in controversy, neither destroyed nor lessened its value as a test or standard with which to compare the signature in dispute. The counsel for the plaintiff, in further support of this assignment, say that they do not claim that this signature to the note in controversy bears any resemblance to the ordinary signature of Martin Castner. But the defendant could not be expected to anticipate that the plaintiff would make such admission. Even if it had been solemnly made and put

on the record, the error was, not in admitting proof of a fact that harmed the plaintiff, but in taking up time to prove a fact that he admitted. This would not be a ground for reversal and putting the parties to the expense of another trial.

14. To authorize the admission of the writing offered as a test or standard, nothing short of evidence by a person who saw the party write the paper, or of an admission by such party of its being genuine, or evidence of equal authority, is sufficient: Baker v. Haines, 6 Whart. 283. This rule has been adhered to in later cases (Cohen v. Teller, 93 Pa. 123), and was not changed by the act of 1895. The case of Sweigart v. Richards, 8 Pa. 436, is not an exception; it simply decides that certain evidence is of " equal authority." Under the act of 1895, the document or writing offered for purpose of comparison must be " admitted to be genuine," or " proven to the satisfaction of the judge to be genuine." The execution of the test paper offered by the plaintiff in this case was seriously in conflict. Martin Castner denied it and the witness called to prove it was contradicted by proof of his subsequent declarations, and other testimony. Even according to his testimony it is more probable that the handwriting, in a physical sense, was that of J. P. Castner than that it was that of Martin Castner. He said, " J. P. Castner held the pen and Martin Castner had his hand on top of J. P. Castner's hand." The court first admitted the paper but afterwards reconsidered the matter, and upon the defendant's motion struck it out, at the same time saying, amongst other things : " The only evidence offered on the part of the plaintiff is that of Peter Walley taken by deposition, and it is of such an uncertain character that it leaves a doubt in our mind as to the paper being sufficiently proved." Unquestionably it is the duty of the judge to require the same kind of proof as was required prior to the act of 1895; but if such proof is furnished and there is opposing testimony, his decision of the question of fact must ordinarily be accepted as conclusive, for the obvious reason that the credibility of the witnesses is an important factor, and of this he had better opportunity to judge than is afforded the appellate court. The paper in question was neither " admitted to be genuine " nor " proven to the satisfaction of the judge to be genuine." The statutory conditions were not fulfilled. Tak-

ing into consideration the manner in which it was alleged to have been executed by Martin Castner, and the serious conflict of testimony as to whether it was executed in any manner, by him, it is not for us to say that the judge ought to have been satisfied with the proof and admitted the paper. Even according to the plaintiff's showing, the paper had little, if any, more value as a test paper than if the signature had been written by J. P. Castner by Martin Castner's direction, and it had less value than a letter press copy, which, in Cohen v. Teller, supra, was held to be inadmissible. The testimony of J. B. Flack, quoted in the twenty-fourth assignment, was based on this paper, and when it was ruled out nothing of any consequence in that testimony remained which was relevant to the issue. Therefore the court committed no error in striking it out, or in the instructions complained of in the thirtieth assignment.

The remaining questions relate to the charge of the court and the answers to the points.

15. As the issue stood when the case was tried, the burden of proof rested on the plaintiff, and it was incumbent on him to establish his allegation that the note in suit was signed by the defendant or by some one authorized by him : Sossong v. Rosar, supra ; Harris v. Harris, supra ; Shrader v. U. S. Glass Co., 179 Pa. 623. In such a case as this, where the defense consists of a general denial of the plaintiff's allegation, it is sufficiently accurate to say to the jury that the burden of proof is on the plaintiff throughout, and does not shift; especially when such instruction is accompanied by the explanatory statement that the weight of the evidence may shift from side to side in the progress of a trial, according to the nature and strength of the proofs offered in support or denial of the main fact to be established, and the further instruction that if the jury find that the evidence preponderates in favor of the plaintiff it is their duty to render a verdict in his favor.

16. The instructions complained of in the twenty-seventh, twenty-eighth and twenty-ninth assignments of error, read without reference to the context, would seem to be open to the criticism that the question at issue was to be, or at least might be, determined by the jury from a comparison of the disputed signature with the signatures proved to be genuine,

and that alone.   We feel quite sure that this was not what the learned judge meant, and looking at the charge as a whole it is probable that the jury did not so understand him.   It must be conceded, however, that the expressions, especially in the twenty-eighth assignment, were unfortunate, and while, perhaps, the error, standing alone, is not sufficiently clear to require a reversal of the judgment, yet we deem it our duty to call attention to it in order that it may be avoided in the next trial.

17. The answer to the thirty-second assignment of error is twofold: first, the presumption against the defendant from his failure to call J. P. Castner is no stronger than that against the plaintiff from his failure to call him ; second, the court was justified in refusing to charge as a matter of law that there was a " presumption " against either.   Under some circumstances the jury may draw an unfavorable inference against a party from the nonproduction of evidence, but it is an inference of fact, not a presumption of law : Wills v. Hardcastle, 19 Pa. Superior Ct. 525, and cases there cited.

18. In discussing other assignments of error we have incidentally passed upon the questions raised by the thirty-first, thirty-fourth and thirty-fifth assignments, and the thirty-third does not require discussion.   It is sufficient to cite the case of Penna. Co. v. Franklin Fire Ins. Co., 181 Pa. 40, at p. 49.

19. The last assignment alleges error in the affirmance of the defendant's sixth point, which was as follows : " Under all the evidence in this case, if the jury do not believe the evidence of Mettie Castner that Martin Castner told her, or in her presence, that he had signed the Yeany note, the verdict must be for the defendant."   It would unduly extend this opinion, already too long, to attempt a recital and an analysis of the evidence introduced by the plaintiff, outside of that of Mettie Castner, tending to show that the defendant signed or authorized his name to be signed to the note in suit.   Nor is it necessary to do so, for it is fully and accurately summarized in the judge's charge. We therefore simply state our conclusion, reached after a thorough and careful examination of it, that it would be insufficient, standing by itself, to sustain a recovery in favor of the plaintiff upon a note alleged by the defendant to be a forgery. In other words, if Mettie Castner's testimony had not been introduced, or for any proper cause had been struck out, the court

would have been compelled to give binding instructions for the defendant, if asked to do so. Such being the case, it was not error to affirm the point. The learned judge had already instructed the jury to give careful consideration to all the evidence, and that it was their duty to do so was recognized in the point. The effect of the affirmance of the point was not to withdraw any of it from their consideration, either in determining the main question or in deciding as to the veracity of Mettie Castner. It only directed them as to their verdict in the event that upon a consideration of all the evidence they should not believe Nettie Castner. We recognize the principle, stated by Mr. Justice TRUNKEY in Ott v. Oyer's Executrix, 106 Pa. 6, that " the credit of a witness may be so shaken that a jury would not rely upon his testimony alone to establish a fact, and yet justly consider it with other testimony; " but we are not convinced that the effect of the affirmance of this point was to direct or permit the jury to disregard it.

All the assignments of error, excepting the twelfth, twenty-eighth and twenty-ninth, are overruled, the judgment is reversed and a venire facias de novo awarded.