# Anderson to use *v.* Long, Appellant.

*Practice, C. P.—Depositions—Parties—Suit to use.*

1. Where in an action of assumpsit the plaintiff is designated as "David R. Perkinpine, Assignee of Percy Anderson," and subsequently the name of the party plaintiff is amended by leave of court so as to read "Percy Anderson to the use of David R. Perkinpine," and it appears that at the trial the claim had been assigned prior to the beginning of the suit without fraud, the testimony of the use plaintiff as to the consideration of the assignment and matters of defense taken on deposition, is admissible, although the deposition was taken after the amendment. In such a case the use plaintiff took no better right of action than his assignor had, and all defenses that could be urged against the assignor applied with equal force to the use plaintiff.

*Practice, C. P.—Commissions—Production of plaintiff for cross-examination.*

2. Where a commission to take testimony has been issued by plaintiff after exceptions to interrogatories had been passed upon, the defendant cannot demand, three weeks before the trial, that the witness examined under the commission be produced at the trial for cross-examination, where it appears that such witness was in London, England, at the time the demand was made, and that there was ample time for the defendant to have issued his own commission, if he was not satisfied that the matters in dispute had not been fully covered under the plaintiff's commission.

*Practice, C. P.—Commissions—Evidence—Opening of commission.*

3. A commission to take testimony executed in England and stamped on its return with the words "Supposed liable to custom duties" will not be rejected at the trial because it was opened by the deputy prothonotary and customs officers.

*Practice, C. P.—Commissions—Evidence—Jurat.*

4. Where a deposition under a commission shows that the witness was "duly sworn and examined on the part of the plaintiff," on a date given, before a named notary public, at a place indicated, under the authority given him by the commission, and that each page of the deposition was attested by the witness and commissioner, the deposition will not be rejected because it did not show on its face a jurat, or a certificate of the commissioner showing that the necessary oath was taken by the witness.

5. The discretion of the court of common pleas in overruling objections to a deposition taken under a commission will not be reviewed

where the deposition shows that the witness fully intended to comply with the requirements of the law, and that the substance of the rule of court had been observed in the taking of his testimony.

*Contract—Performance—Designs for theatrical costumes.*

6. Where a playwright apparently acting for himself, without disclosing any principal, orders from a designer of theatrical costumes a set of plates for costumes for a play which the plaintiff had written himself, and gives to the designer a very wide latitude as to the designs of the costumes without reserving any right that they should be satisfactory to himself or any other person, and agrees to pay for them as soon as the plates are ready, he will be liable for the agreed price of the plates although the costumes do not meet with his own approval.

Argued Oct. 24, 1913. Appeal, No. 152, Oct. T., 1913, by defendant, from judgment of C. P. No. 1, Phila. Co., March T., 1910, No. 3,712, on verdict for plaintiff in case of Percy Anderson, to use of David R. Perkinpine *v.* John Luther Long. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Assumpsit on a contract. Before KINSEY, J.

At the trial it appeared that the action was brought to recover the sum of $840, with interest from July 1, 1908, alleged to be due on a contract, arising out of correspondence between John Luther Long, the defendant, of the city of Philadelphia, who is a playwright, and Percy Anderson, of London, England, who is a costume-plate designer, for the preparation of a set of costume-plates for a play, written by the defendant, and known as "Kassa."

From the record it appeared that the suit was originally brought with the plaintiff named as follows: "David R. Perkinpine, Assignee of Percy Anderson." Subsequently by leave of court the plaintiff's name was amended so as to read as follows: "Percy Anderson to the use of David R. Perkinpine."

Prior to the amendment a commission had been issued to London to take the testimony of Percy Anderson.

The deposition of Percy Anderson taken under the

commission was objected to because the commission had been taken before the amendment had been allowed. Objection overruled. Exception. [1]

Objection was also taken to the admission of the deposition because Percy Anderson was not produced personally in cross-examination in response to a notice dated April 11, 1913, the trial being on May 5, 1913. Objection overruled. Exception. [2]

The following exceptions were made to the deposition:

"That, as appears upon the envelope in which the said commission was returned, the said commission was not legally opened by the prothonotary or his deputy, in accordance with the rule of this court, but by a post office clerk, who is unidentified by name.

"The entry upon the said envelope enclosing said commission is:

"Opened by P. O. Clerk in presence of H. A. Jermon at 2 P. M.

"Upon the said envelope enclosing said commission, appears, however, this subsequent entry, as follows:

"Returned opened and filed Sep. 16, 1902. R. Richardson, pro Prothy." Exception dismissed. [3]

2. "That it does not appear upon the face of the commission, either by jurat to the deposition of the witness, or by a certificate of the commissioner in or attached to said deposition, that the necessary oath as a witness, as required by law, although in the heading to said deposition of said witness, it is stated in typewriting: that he was 'produced, sworn and examined.'" Exception dismissed. [4]

10. "That the said witness in said deposition, declines to answer a portion of the twenty-eighth cross-interrogatory, as follows:

"Have you received any letters or communications of any kind, from the party by whom you have been called as a witness, or from any person on his behalf, respecting the matter in controversy in this suit; if aye,

annex the same to your answers and request the Commissioner to properly mark them."

And the answer of the said witness thereto is as follows:

"I have received letters from Sir Frank Crisp. I refuse to produce such letters. They are privileged communications." Exceptions dismissed. [5]

"Part of the second paragraph, twenty-seventh cross-interrogatory was as follows:

"Have you or not sold said claim or action to him bona fide and for a valuable consideration, and if so, when did you sell said claim or action, and how much money did you actually receive on said purchase and sale of said claim or action, and how and by whom was the same paid; was it paid by check or checks, draft or bill of exchange, or in cash, and if by check or checks, draft or bill of exchange, please state the name and address of the maker or makers thereof and the bank or banks on which it was drawn; in addition to the payment, if any, made to you or any other persons for you, by David R. Perkinpine, on assignment of this claim, please say do you or any other person for you expect to receive any further sum or sums thereon, and if so, what, and under what conditions and from whom; is there any arrangement whatever between you, or any other person for you, notwithstanding the assignment. If such further agreement has been reduced to writing, please identify the same, state whose signatures are attached, and hand it to the commissioner and request him to mark it and attach to your deposition. Is it true, that you yet own said claim or action, but have assigned it only for the purpose of suit and that no consideration passed on the assignment of said claim; if so, then state why you so assigned said claim and for what purpose, and at whose suggestion or recommendation and name any person or persons who have any interest in the same."

Mr. Smith: I object to the whole question, and es-

pecially to that part of it, because it is immaterial and irrelevant. The assignment speaks for itself.

Mr. Rumsey: This goes to the bona fides of the assignment.

·Objection sustained. Exception for defendant. [6]

The court charged, inter alia, as follows:

[The claim of plaintiff is based upon a contract made with him to do certain work, by certain letters written to him, which are in evidence before you; upon one side, that the work was performed and corresponded with the directions contained in the letters, and it will be for you to say whether or not there has been a substantial compliance with those directions.

The other side says, on the contrary, "Oh, no; that does not prevail here; that those specifications were written with a dominant keynote prevailing, namely, the tone of Hungary of the inaccessible portions, and the remote atmosphere incidental to that locale, and these costume plates, as they are called, do not comply with that, and therefore we do not accept them as a compliance."

Now, which is right about that is the question that you are to decide; the one side alleging that the work is not Hungarian; the other that it is substantially Hungarian, and that, in any event, it was done in accordance with the directions contained in the letters.] [7] Exception for defendant.

[But this whole question is for you, taking all these matters into consideration, all the testimony you have heard, and that question is, has there been a substantial compliance with these instructions? You may take the instructions; take the letters, and these pictures, and compare them, and come to a conclusion.] [8]

Plaintiff presented these points:

4. That the letter wherein John Luther Long wrote to Percy Anderson stating, "Your terms will be satisfactory and I will see that a bill of exchange is sent you

as soon as you let me know that the plates are ready and then I will tell you how to ship them," taken in connection with the letter of Percy Anderson notifying John Luther Long that plates were ready, constituted an obligation on the part of Long to send a check for the amount of Percy Anderson's bill and also to send directions to the said Anderson how to ship the said plates and to whom, before the said Percy Anderson would be bound to release possession of the plates. *Answer:* That I affirm, if there was a substantial compliance with the directions as given by Long. [9]

5. That if the jury believe from the evidence in this case that John Luther Long made the contract with said Percy Anderson and that the said Percy Anderson substantially performed his part of the contract by making said plates according to the general instructions from Long to Anderson, and the discretion as to originality and invention to be exercised by Anderson, then it was not necessary for the said Percy Anderson to tender said plates to John Luther Long before he could recover for the work and labor done. *Answer:* That I affirm. It should have been drawn with a slight difference under the contract, but I affirm it as it stands. [10]

Verdict and judgment for plaintiff for $1,051.95. Defendant appealed.

*Errors assigned* were, inter alia, (1–6) rulings evidence as above, quoting the bill of exceptions; (7–10) above instructions, quoting them.

*Horace M. Rumsey,* for appellant.—This commission was taken in one case and read in another case. Under the law in Pennsylvania, an assignee of a chose in action must sue in the name of his assignor, otherwise he cannot recover: Germantown Ry. Co. v. Fitler, 60 Pa. 124; Osborn v. Bank, 175 Pa. 494; Croyle v. Gulich, 33 Pa. C. C. Rep. 362; Glenn v. Marbury, 145 U. S. 499; Horbach v. Knox, 6 Pa. 377.

The commission was inadmissible because the defendant had demanded the appearance of the plaintiff, Percy Anderson, at the trial for cross-examination: Gray v. Braden, 13 Pa. Dist. Rep. 481; Goodman v. Wineland, 61 Md. 449; Berdan v. Greenwood, L. R. 20 Chanc. Div. 764, n; Light v. Anticosti Island Co., 58 L. T. Rep. 25.

The commission was improperly opened: United States v. Price, 27 Fed. Cas. 623, Case No. 16,089.

The commission was not admissible, as it did not appear the witness had been qualified: Stonebreaker v. Short, 8 Pa. 155; Zehner v. Coal & Nav. Co., 20 Pa. C. C. Rep. 29; Bowman v. Paulhaums, 20 Pa. C. C. Rep. 600.

The defendant was entitled to attack the assignment of the claim: Galway's App., 34 Pa. 242; Parke v. Chadwick, 8 W. & S. 96; Kennedy v. Ware, 1 Pa. 445; Strawbridge v. Cartledge, 7 W. & S. 394; McMullin v. Glass, 27 Pa. 151; Taylor v. Preston, 79 Pa. 436; West Chester & Phila. R. R. Co. v. Broomall, 18 W. N. C. 44; Rimestone v. Reifsnyder, 4 Pa. Superior Ct. 78.

The lower court erred in applying the doctrine of substantial performance to the contract in this case: McEntyre v. Tucker, 25 N. Y. Supp. 95; Harrigan v. Turner, 53 Ill. App. 292; Harris v. Sharples, 202 Pa. 243; Turner v. Osgood Art Colortype Co., 223 Ill. 629.

*Morris Edgar Smith,* for appellee.

OPINION BY ORLADY, J., February 20, 1914:

The plaintiff is a designer of theatrical costumes, resident of London, England, and the defendant a playwright of Philadelphia. The parties were well known to each other in their respective occupations. The defendant was engaged in the creation of a play, and secured the services of the plaintiff to make the designs for the costumes necessary for its production. A number of letters were exchanged in regard to its general and spe-

cial nature, its locale, characters, and description of costumes, etc.

On May 5, 1908, Mr. Anderson wrote, "When I know the date I can finish the drawings I will write, and on receipt of the cheque for the work the designs will be dispatched to you immediately." Mr. Anderson declined to forward the plates until he received the draft covering their value. On April 18, 1910, Mr. Anderson assigned his claim against Long to David R. Perkinpine of Philadelphia, and this action was begun. The title of the case was amended during the trial to read "Percy Anderson to the use of David R. Perkinpine" by leave of court. A trial before the court and a jury was had, and after four days resulted in a verdict in favor of the plaintiff for $1,051.95.

The assignment of the claim was specific "for good, valuable and adequate consideration by me received." There was no allegation of fraud, and whether this right passed by assignment to the equitable plaintiff is a question that did not concern the defendant, a verdict and judgment for either party, as the record stands would be a bar to any further action against him on this claim: Sentinel Printing Co. v. Long, 28 Pa. Superior Ct. 608. The use plaintiff took no better right of action than Percy Anderson had, and all defenses that could be urged against him, applied with equal force to Perkinpine. The defendant was not deprived of any right, and the court admitted the testimony of the use plaintiff, as to the consideration of the assignment so that the jury had possession of all the facts of that branch of the case. By the court's qualification of the defendant's first point for charge, the defendant had the full benefit of the defendant's asserted right to challenge the assignment. It did not change either party's legal right nor involve any new issue.

A rule for a commission was taken by plaintiff October 6, 1911, when interrogations were filed. To these the defendant filed exceptions, and after a hearing

thereon, an interrogatory was modified, then cross interrogatories were filed by the defendant, and after a number of orders made by the court, the commission was issued, returned and opened on September 25, 1912, to which exceptions were filed and after hearing these were dismissed.

Counsel for both parties kept in close touch with this part of the proceeding. On April 11, 1913, demand by the defendant was made of plaintiff's counsel to produce Mr. Anderson at the trial for cross-examination, but this was manifestly too late in time as the case was on the trial list for May 5, and Mr. Anderson was in London, England. Moreover, the defendant could have issued his own commission at any time after September 25, 1912, if the subject-matter had not been fully covered to meet his views of the testimony. Section 8, of the Act of May 23, 1887, P. L. 158, provides: "That in any civil proceeding, the testimony of any competent witness may be taken by commission or deposition in accordance with the laws of the commonwealth and the rules of the proper court." And rule 15, paragraph 7, of the Philadelphia court rules, is as follows: "A rule for a commission to any of the United States, or to foreign parts, is also of course, but the interrogatories must be filed in the prothonotary's office at the time, and written notice of the rule, and the names of commissioners must be served on the adverse party at least fifteen days before the commission issues in order that he may file cross interrogatories or nominate commissioners on his part."

No objection was made to the suggested commission or to the interrogatories, after the original exceptions thereto had been disposed of by the court. On its return by mail service, it was found to be stamped "Supposed liable to customs duties" when a deputy prothonotary attended the opening of the sealed package, so as to permit an examination of the contents by customs officers and determine if any article subject to

customs duty was included. This was in exact accordance with sec. 9, of rule 15, viz: "On the return of any commission . . . . the same may be opened by the prothonotary or his deputy, who shall mark upon the envelope and commission . . . . his name and the date of opening and filing, and shall give notice to the parties." Inspection of the deposition clearly shows, "Percy Anderson being duly sworn and examined on the part of the plaintiff doth depose and say" on the date given, before a named notary public at the place indicated, under the authority given him by the commission, etc. All the requirements of a properly executed oath are present in the certificate of the deposition, each page of which is attested by the witness and commissioner: Clarke v. Benford, 22 Pa. 353. If there is any ambiguity in the answer to some of the interrogatories, it is likely due to the involved character of the cross interrogatories, but a fair examination of them indicates that the witness intended to fully comply with the requirements of the law, except as to those which applied to conversations had with and letters received from his London solicitor, which were had and received after this suit was instituted, and were properly held to be confidential communications and not relevant. There is no suggestion of evasion or desire to conceal any material fact in the examination of the witness. The court acted clearly within its discretion in overruling the objections and admitting the testimony. When a matter is within the discretion of the court and the substance of a rule of court is observed, a departure by the court from the form of the rule is immaterial. Logan's Assigned Est., 213 Pa. 218; International Coal Min. Co. v. Railroad Co., 214 Pa. 469; Shannon v. Castner, 21 Pa. Superior Ct. 294.

The appellant states the prominent defense to be that Percy Anderson had not performed his contract and the designs were not in compliance with the directions of the defendant, and that an inspection of the plates disclosed

this failure to comply with the instructions given. The conditions of the contract are to be gathered from the letters passing between the parties, but on the trial an entirely new feature was added. The written instructions given by Long to Anderson were quite meager and indefinite, and much was left to the designer, to present the thought of the play. This view is apparent from the letters. Anderson writes "I think I grasp your ideas sufficiently to make the drawings as you wish them to be." He never saw the manuscript of the play. He received a general description of the costumes of five participants and these—as testified to by defendant's expert witnesses—were of the type suggested by the description given, but entirely different from the national peculiarities of the characters presented. Long wrote, "Use your own inventions. Yes, the play is poetical and a bit fanciful. I do not think the designs will be hurt a bit if this feeling does creep into them. I here add some details of each, more in the way of suggestion than anything else, preferring to leave you to be original. The play calls for seven or eight smart Viennese men and women in hunting things and so on. I am running this off merely to get you into the spirit of the thing.—There are a number of other smart women in the play who I suppose should wear modern clothes. The wanton should be somewhat overdressed, yet in an artistic fashion. She should be a big woman, suggesting a bit the gipsy. The beggar-student is a very picturesque youth—there will be priests, acolytes, nuns, officers, a crowd—two brides, with thirty differently colored petticoats apiece on them. The locale of the play will be modern Hungary—but there will be about it all a remoteness, such for instance, as is found in the less accessible parts of the kingdom. The story begins and ends in an ancient convent of a peculiar foundation." The above excerpts are taken from the letters of the parties, showing the indefinite description given of the characters and their costumes, and the wide

scope given to the designer. An exact, literal compliance with such an order would be impossible as the mind of the author seems to be in as much doubt as to the mounting of this play as his written description of its materials.

On the other hand, there was no promise by Mr. Anderson that his work should meet the criticism of Mr. Long or his friend. He accepted the employment upon specific terms. "I may charge you as little as one hundred and fifty pounds—in any case not more than two hundred pounds," and, as before quoted, "When I know the date I can finish the drawings I will write and on receipt of the cheque for the work the designs will be shipped to you immediately." In response to this Mr. Long wrote, "Your terms are satisfactory and I will see that a bill of exchange is sent to you as soon as you let me know that the plates are ready, and then I will tell you how to ship them." On May 22, 1908, Mr. Anderson wrote, "The designs for your play will be completed the first day of June, and the price for them will be one hundred and sixty guineas (equal to 168 pounds), on hearing from you I will at once forward the designs." To this Mr. Long answered, "All right, dear Mr. Anderson, and thank you for the work in advance. I am sending your letter on to Mrs. Carter, who is on tour, who will sent you your draft and direct you how to ship the designs."

On the trial, Mr. Long admitted that he had never demanded an inspection of the plates prior to bringing this suit, or of a delivery of them to him. He made no offer of payment or explanation, further than that he had an understanding of some undisclosed character with Mrs. Leslie Carter, who, he stated, "Was mad to send you your draft and have the plates." Nowhere in the contract is found any suggestions that they were to be paid for on approval of Mrs. Carter, or on delivery to Mr. Long. The price was due and payable when they were completed by Mr. Anderson, and on the trial there was a mass of evidence received under objection

from the plaintiff that was irrelevant—of this the plaintiff does not complain, because, despite its admission, he recovered his verdict and the defendant had the advantage of it with the jury.

There was nothing in the writings to suggest that Mr. Long was acting for an undisclosed principal. No name is mentioned other than his own. He writes, "The contents of your letter are satisfactory to me. I will see that a bill of exchange is sent to you—then I will tell you how to ship them." It was his play, the designs were to be sent to him, he negotiated on his own responsibility. Having entered into the contract in his own name, without disclosing the identity of any principal, he rendered himself personally liable.

The case was carefully conducted by able and zealous counsel, and while the defendant was given much wider range than he was entitled to, the verdict is fully warranted by the plaintiff's proofs, which were rightfully received. The charge of the court was adequate, and clearly presented the conflicting evidence in a way that the jury understood the facts. We discover no reversible error in the record and all the assignments are overruled and the judgment is affirmed.