# Sweeney *v.* Floyd, Appellant.

*Negligence—Automobiles—Pedestrian—Injuries to—Case for jury.*
In an action of trespass to recover damages for personal injuries, the case is for the jury and a verdict for the plaintiff will be sustained, where the issue is one of fact as to the exact manner in which the plaintiff was struck by, or came into collision with, defendant's automobile.

*Trials—Charge of court—Points improperly drawn—Witnesses—Contradiction.*
Points based on assumptions of fact are properly refused where the evidence shows that there is a contradiction as to the matters assumed to be true in the points, as are also points in negligence cases which close with a request for instructions that there can be no recovery and at the same time ignore facts involved which are clearly for the jury.

Whether a party shall be permitted to endeavor to discredit an adverse witness by proof of contradictory statements without first calling his attention to them, in order that he may have an opportunity to explain or reconcile them, is a matter for the exercise of a sound discretion by the trial judge under all the circumstances before him.

The general rule—that an opportunity to explain or reconcile, if possible, such conflicting statements should be afforded—is for the benefit and protection of the witness. Where a witness had not

been afforded an opportunity to explain the circumstances under which a written statement was obtained, there is no abuse of discretion in sustaining the objection to its admission in evidence.

Argued October 7, 1926. Appeal No. 31, October T., 1926, by defendant from judgment of C. P. No. 2, Philadelphia County, March T., 1925, No. 648, in the case of Charles Sweeney v. Frank J. Floyd. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN and CUNNINGHAM, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before GORDON, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff in the sum of $2,000 and judgment thereon. Defendant appealed.

*Error assigned,* among others, was refusal of defendant's motion for judgment non obstante veredicto.

*S. S. Herman,* for appellant.

*J. Morris Yeakle,* for appellee.

OPINION BY CUNNINGHAM, J., March 3, 1927:

The jury in the court below found that plaintiff suffered serious injuries through the negligent operation by defendant of an automobile and returned a verdict fixing his damages at $2,000. Defendant's point for binding instructions having been refused and his motions for a new trial and for judgment n. o. v. overruled, this appeal followed. The assignments charge error: (a) in above rulings; (b) in refusing defendant's second point; and (c) in sustaining an objection to the admission in evidence of a certain written statement signed by one of plaintiff's wit-

nesses and offered for the purpose of discrediting his testimony.

1. Plaintiff, a man about sixty-two years of age, was injured while returning from work to his home, located on the south side of Federal Street in the City of Philadelphia, about five o'clock on the afternoon of August 18, 1924. The accident occurred in the vicinity of the intersection of three streets, each paved with asphalt and having a width of fifty feet from house line to house line, with twelve foot sidewalks on each side, and cartways twenty-six feet in width. These streets are Federal and 20th Streets and Point Breeze Avenue. Federal Street runs east and west and is crossed at right angles by 20th Street running north and south. At the southwest corner of Federal and 20th Streets Point Breeze Avenue begins and extends southwestwardly, thereby forming at this triple intersection a sharp angle with 20th Street south of Federal and a wider angle with Federal west of 20th.

The location of the cartways and the sidewalks at the intersection is such that, if the sidewalk along the western side of Point Breeze Avenue were extended northeastwardly across the cartway of Federal Street, it would strike the sidewalk on the north side of Federal Street at a point some twenty feet west of the intersection of Federal and 20th Streets on the north side of Federal Street. There were no marks designating the path to be used by pedestrians at any of the five crossings here located. The uncontroverted testimony indicates that plaintiff, who had been familiar with the locality for seventeen years, after leaving a watchmaker's shop located on the east side of 20th Street north of Federal walked south to the north side of Federal, turned west and crossed 20th Street at its intersection with the north side of Federal and then continued west on the north sidewalk of Federal Street to a point twenty or twenty-five feet west of 20th

Street. Being desirous of crossing to the south side of Federal Street, plaintiff, before stepping from the curb, looked both ways on Federal Street and saw a truck driven by one Robinson (called as a witness for plaintiff) approaching from the east and about to cross 20th Street, and also saw the automobile driven by defendant approaching from the west and then about midway of the block. From this point on the testimony is conflicting, both with respect to the manner in which plaintiff received his injuries and whether at that time he was traversing the cartway at a "crossing." In response to a question directing him to tell just what happened after he stepped from the curb, plaintiff testified: "A. As I walked across I seen nothing until I got to the south side of the street and was knocked down. I seen a truck coming, and the truck stopped to let me pass. Then I went over to within a step or two, or two or three feet from the sidewalk, and I looked east to see if anything was coming that way, and I seen the automobile, and I pulled—stepped back, but I had no time and was struck and knocked down. Q. You were struck by the automobile then? A. Yes. I pulled back a step, but I had no time to pull a step back, and it struck me. Q. What part of the car hit you? A. The fender."

On the other hand the defendant's version of the accident appears from these quotations from his testimony: "A. I was driving east on Federal Street, and this big truck was coming west. I noticed Mr. Sweeney first when he alighted from the sidewalk, and when he started to pass over, the truck was possibly around fifteen feet away from him, and I was about the same distance west of him, on the west side. As soon as Mr. Sweeney alighted from the sidewalk, I realized his plight. I could not see how he could possibly miss the two of us. I immediately applied the brakes and came to a stop. The truck coming

west blew his horn, and Mr. Sweeney, as he came from the sidewalk, had his head down. As the truck blew its signal, he immediately looked up and became startled and he made a dive across in front of the truck, missing the truck, and at that moment I had stopped, but he dashed into my car, on the left front fender, and the momentum with which he hit my car sort of knocked him back possibly two or three feet away from my car, causing him to fall, and as that happened he was down about my front wheel. I immediately got out of the car and went to his assistance.''

The evidence with respect to the exact location of plaintiff when injured with relation to the intersection of the sidewalk along the western side of Point Breeze Avenue and the sidewalk along the south side of Federal Street is conflicting and indicates distances varying from three or four feet to the width of an ordinary house, possibly twenty-five feet. Under this conflicting evidence and in view of the difficulty of determining, by reason of the convergence of the three streets, just where the driver of an automobile should reasonably expect to find pedestrians crossing the cartways, the learned trial judge submitted to the jury the question of determining ''the crossing, the place where automobilists should expect persons to be crossing,'' instructing them that the place where an ordinarily prudent man, looking at the situation as he came along, would expect pedestrians to cross was the place where an automobilist was bound to exercise a higher degree of care than between crossings, and on the other hand that a pedestrian ''if he is crossing at any other part of the highway, that is, between crossings, is bound to use a higher degree of care than at the crossing.'' The questions relative to the duties of automobilists and pedestrians respectively at street crossings and along blocks between crossings, and to the defendant's negligence and the plaintiff's contri-

butory negligence, were submitted to the jury in a charge so comprehensive and impartial that no exception thereto was taken by either party. After reviewing the respective contentions of the parties the court said to the jury "So if you believe defendant's story as to how this accident happened, I don't see any negligence on the part of the defendant." The jury evidently did not accept the defendant's version of the accident. In disposing of this branch of this appeal the testimony must not only be read in the light most advantageous to the plaintiff and all conflicts therein resolved in his favor, but he is also entitled to the benefit of every fact and inference of fact pertaining to the issues involved which may reasonably be deduced from the evidence: Uhler v. Jones, 78 Pa. Superior Ct. 313; Mountain v. American Window Glass Co., 263 Pa. 181.

Considering the whole record the following inferences of fact were justifiable under the evidence. Plaintiff started to cross the street at a point where the driver of an automobile traveling east on Federal Street might reasonably expect to find pedestrians crossing; defendant, while approximately midway of the block, saw plaintiff step from the curb into the cartway; and plaintiff did not change his course. Under these circumstances it was the duty of the defendant to be exceedingly vigilant in having his car under such control that he could stop at the slightest sign of danger. Colliding with a pedestrian under such circumstances is evidence of negligence: Robb v. Quaker City Cab Co., 283 Pa. 457, and cases there cited. Speed is not the only element that enters into the question of negligence and, regardless of it, a car may be under such imperfect control as to amount to negligent operation thereof: Anderson v. Wood, 264 Pa. 98. Whether plaintiff was injured through the negligent operation of defendant's car or through

his own negligence ran into its fender with such force as to cause him to fall in the street with a broken leg· was, in the opinion of a majority of the members of this court, a. question for the jury, and the first, third, fourth and fifth assignments of error are overruled.

2.   By the second assignment it is charged that the trial judge erred in refusing defendant's second point for charge, which read: "It is necessary, in order that the plaintiff may recover for injuries caused by being struck by an auto—at a place other than a street intersection that such plaintiff shall have been in the pathway of the automobile for a time sufficient to enable the driver, in the exercise of reasonable care, to stop and avoid the accident.   If you believe, therefore, that the plaintiff here was not in the pathway of the car at all or was not in the pathway of defendant's car for a time sufficient for the latter, in the exercise of reasonable care, to avoid the accident, your verdict must be for the defendant."   The trial judge refused this point because in his opinion it was "an inadequate statement of the law."   We are of opinion that the point was properly refused.   It is predicated upon the degree of care required from an automobilist with respect to a pedestrian crossing a street at a place other than a crossing and assumes as a fact that plaintiff was so crossing.   Whether plaintiff was injured "at a place other than a street intersection" was a disputed fact.   Points based on assumptions of fact are properly refused where the evidence shows that there is a contradiction as to the matters assumed to be true in the points, as are also points in negligence cases, which, as here, close with a request for instructions that there can be no recovery and at the same time ignore facts involved which are clearly for the jury: Friedland v. Altoona and Logan Valley Electric Rwy. Co., 59 Pa. Superior Ct. 539; Dietrich

v. Lancaster, 212 Pa. 566. The second assignment of error is accordingly overruled.

3. John Robinson, the driver of the truck which stopped in order to avoid injury to plaintiff, was called as one of his witnesses and, after testifying that as he was approaching 20th and Federal Streets from the east plaintiff stepped off the north curb going to the south side of Federal Street, continued: "I blowed my horn, and he kind of quickened up, pulled out ahead of me. He wasn't running. He just walked a little faster. I seen he was going across instead of stop, so I slowed down, and there was a touring car coming east on Federal Street, about the middle of the block, and just as he crossed in front of me, the touring car struck him." During his cross examination counsel for defendant handed him a paper and asked whether the signature thereto was his, to which the witness replied that it was. He was then asked whether he had read the paper before signing it and answered in the affirmative. Counsel for defendant then offered the statement in evidence but the trial judge reminded him that it was not admissible at that stage of the trial. The statement was then marked by the stenographer for identification and, for our information, has been printed, along with the record. It is evidently a statement relative to the circumstances of the accident procured from the witness by a representative of the defendant and was written by someone other than the witness. The version of the accident therein contained differs materially from the testimony of the witness at the trial and particularly in that according to the statement the witness at that time said, inter alia, "I sounded my horn and slowed down thinking he would jump back to the north curb, but instead this old man darted across the street and ran directly into the path of a Roadster that was east bound on the south side of Federal Street very slow.

It was the front of the car that the old man ran into and it knocked him down. ........but I would not like to say as to whose fault it was.'' The attention of the witness was not directed in any way to the apparent discrepancies between his testimony on the stand and the contents of the statement; nor was the paper shown to plaintiff's attorney. Shortly after Robinson left the stand a recess was taken during which he left the courtroom and did not return. At the conclusion of the case and after all other evidence was in counsel for defendant offered the statement in evidence and the objection of plaintiff's counsel to its admission was sustained. Up to that point in the trial there had been no intimation of the contents of the paper or of the purpose for which it had been identified. Whether a party shall be permitted to endeavor to discredit an adverse witness by proof of contradictory statements without first calling his attention to them, in order that he may have an opportunity to explain or reconcile them, is a matter for the exercise of a sound discretion by the trial judge under all the circumstances before him: Shannon v. Castner, 21 Pa. Superior Ct. 294, 324, and cases there cited. The general rule—that an opportunity to explain or reconcile, if possible, such conflicting statements as here appear should be afforded—is for the benefit and protection of the witness. As the witness had not been afforded any opportunity to explain the circumstances under which the statement was obtained, in whose language it was expressed and other material matters, we are not persuaded that there was any abuse of discretion in sustaining the objection to its admission in evidence and the assignment of error relating thereto is dismissed.

The judgment is affirmed.